373 So.2d 554 (1979)
Donald G. LAMBERT, Sharon W. Lambert, Lambert Aviation, Inc. and Lambert Construction Company, Inc.
v.
Alwynn J. CRONVICH, Sheriff for the Parish of Jefferson, et al.
Nos. 9647, 9646.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 1979.
Rehearing Denied August 13, 1979.[*]
Writ Refused October 19, 1979.
*555 Marian Mayer Berkett, Deutsch, Kerrigan & Stiles, New Orleans, counsel for Maryland Cas. Co., defendant-appellant, Charles F. Seemann, Jr., Matt J. Farley, New Orleans, of counsel.
Henry L. Klein, Klein & Rouse, Cecil M. Burglass, New Orleans, counsel for Donald G. Lambert and Sharon W. Lambert, plaintiffs-appellees.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Robert E. Winn, J. David Forsyth, New Orleans, counsel for the Bank of New Orleans and Trust Co., defendant-appellant.
Eugene R. Preaus, Eileen Gleason Shaver, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, counsel for Hibernia Nat. Bank in New Orleans, defendant-appellant.
Before LEMMON, BOUTALL and BEER, JJ.
BOUTALL, Judge.
This is a suit filed by judgment debtors against judgment creditors seeking to prevent excessive seizure of the debtors' assets and to reduce the judgment by crediting payment of certain funds towards it. On trial it was consolidated with the case of Bank of New Orleans and Trust Company et al. v. Lambert et al., # 184-822 of the 24th Judicial District Court, Parish of Jefferson, and the consolidation was continued on appeal in this court under Docket # 9646, 373 So.2d 550. It is the judgment in that case sought to be modified herein.
The original suit, i. e. the companion suit, was a suit filed by The Bank of New Orleans and Trust Company, Maryland Casualty Company and Hibernia National Bank in New Orleans vs. Donald G. Lambert, Sharon W. Lambert, Lambert Aviation, Inc. and Lambert Construction Company, Inc. as continuing guarantors, and as makers and endorsers, on certain promissory notes representing money loaned by the banks. That case resulted in a money judgment in excess of $5,000,000 rendered on November 30, 1976. A devolutive appeal was subsequently taken on January 31, 1977, which is the companion case, # 9646 of our docket.
On February 7, 1977 the present suit was filed by those same four defendants, Donald G. Lambert, Sharon W. Lambert, Lambert Aviation, Inc. and Lambert Construction Company, Inc. seeking an injunction to stay execution on the November 30, 1976 judgment and asking for an accounting of certain funds which should be applied as credit to the reduction of the amount of the judgment. These funds are alleged to be payments received from the trustee in bankruptcy of Donald G. Lambert Contractor, Inc., the primary obligor on most of the notes, certain funds on deposit with The Bank of New Orleans, and funds alleged to be due Donald G. Lambert Contractor, Inc. for work done but not paid for on several public road contracts, which were eventually paid to Maryland Casualty Company, the surety on the construction bonds in those contracts.
After the petition was filed there then began a procedural contest between the parties resulting in a myriad of pleadings being filed, such as to make the legal battleground a morass of technical obstacles. Because of the result we reach on the merits of these claims, we find it unnecessary to discuss all of them because most have lost their relevance. Additionally, the litigation between these parties has been bitter and prolonged and we conclude that a decision on the merits will assist in its final resolution.
From the outset of this suit, the trial judge was presented with procedural questions relating to the ability of plaintiffs to bring such a suit to modify the judgment in the companion suit, as well as the applicability of all of the sums sought to be included as credit. Initially the trial judge concluded that the only fund which could be properly allocated as credit was the amount paid the judgment creditors by the trustee in bankruptcy from the assets of the bankrupt corporation, Donald G. Lambert Contractor, Inc. At that time the record indicates that The Bank of New Orleans and the Hibernia were agreeable to a voluntary *556 credit of these amounts, but no agreement was forthcoming from Maryland Casualty Company. As a result trial was had and judgment was rendered granting the Lamberts credit for those funds paid. The judgment also granted credit against BNO for funds which it had on deposit in Lambert's account and funds received from the collateral pool. Several pleadings followed contesting the correctness of the judgment, and this was followed by several corrected judgments producing the judgment of March 2, 1977 (with the amendment of March 7, 1977) which appeared to have resolved most of the issues presented to the court. That judgment, as amended, decreed the rule for an accounting in the allocation of credits be made absolute, and recognized the following credits against the judgment rendered November 30, 1976 in case # 184-822: (1) that Maryland Casualty Company apply as credit the sum of $1,204,727.62 received from the bankruptcy proceedings, reducing the principal amount owed by that amount; (2) that Hibernia National Bank apply as credit to Lambert the sum of $158,884.74 received from the bankruptcy proceedings reducing the principal amount, (3) that The Bank of New Orleans and Trust Company apply as credit the sum of $1,453,769.41 received from the bankruptcy proceedings plus an additional $126,093.74 being the amount of Lambert funds held at BNO plus additional funds collected, all reducing the principal amount owed. The judgment further ordered that all the pending exceptions or motions filed by BNO and Hibernia to Lambert's reconventional demand in the first suit, with which this suit was consolidated, were re-scheduled for trial.
As to the judgment of March 2, 1977, the appellants herein raise no particular objection as to the amounts credited except that they contend generally that the Lambert plaintiffs in this suit are not entitled to maintain this action as will be considered later on, and that the allocation of the credit directly against the principal itself is improper. However, Lambert obtained new counsel and moved for a new trial on the basis that the judgment did not require the judgment creditors to account for funds that were obtained by them from any of the Lambert contracts, and that the judgment failed to give credit arising from the alleged seizure of contract funds from the State and several other governmental agencies under the pertinent road contracts. While the hearing on the motion for new trial was pending, the Lamberts obtained an ex parte order to consolidate this suit with the original suit, # 184-822, and a third suit entitled Sharon W. Lambert, et al. vs. Maryland Casualty Company, # 196-638, filed subsequent to the original suit.[1]
After hearing, the court granted a new trial on April 19, 1977 limited to evidence of all sums received or credited to Maryland Casualty Company on contracts between Donald G. Lambert Contractor, Inc. and the State of Louisiana or other political subdivisions subsequent to October 1, 1975, said sums to be subject to any credit due Maryland Casualty Company under the law or the terms of the contracts. By this action the court opened up for examination the third fund alleged in the petition to be applicable as credit on the November 30, 1976 judgment. This action resulted in a whole new flurry of procedural activity, resulting in the final judgment appealed from herein granting credit against the judgment amounts of Maryland and the two banks pro-rata. It is this particular credit that is contested on this appeal, and is the key around which the controversy swirls. In our resolution of this appeal, we proceed directly to the merits of the judgment, because we believe this makes most of the procedural matters asserted herein moot. The procedural complexities in this case were of such a magnitude, that we applaud the determination of the trial judge to handle these matters in as orderly *557 a procedure as possible and his attempts to bring the issues between the parties to a final resolution.
In its reasons for granting the new trial, the court explained that originally it was of the opinion that Lambert was not entitled to a credit for any funds allegedly due Lambert under the various public construction contracts and paid to Maryland Casualty. On reconsideration, it determined that it was in error in denying a full and complete evidentiary hearing concerning all sums allegedly due Lambert as well as any off-sets or credits to which Maryland may be entitled. The court then set out the issue and stated the limitations within which it intended to proceed as follows:
"The sole question involved is the effect that various agreements between the parties and between themselves had on funds due Lambert October 1, 1975 and subsequently.
"It is clear to the Court that the documents, all prepared by defendants, evidence a clear intent to liquidate the $2,000,000.00 in new debt with funds from all sources accruing to the Lambert companies, including funds receivable under public construction contracts on October 1, 1975 and subsequently, until default by Lambert as defined in the agreements."
We agree with the analysis of the issue posed by the judge, however we disagree with the interpretation of the documents, and accordingly with his judgment.
The facts show that the Lambert Corporation, Donald G. Lambert Contractor, Inc., had a considerable number of public works contracts in operation for road construction for the State of Louisiana, several parishes and municipalities. Maryland Casualty Company furnished the bond on each of these contracts and was surety for their performance. For each contract Maryland in its bond application form required that Donald G. Lambert and Sharon W. Lambert execute individually a guaranty in the following language:
"In consideration of the MARYLAND CASUALTY COMPANY'S executing the bond(s) herein applied for, we jointly and severally join in the aforegoing premium and indemnity agreements; and the undersigned, if a corporation, admits that it is financially interested in the performance of the obligation which the bond(s) applied for are given to secure, and asserts that it is fully empowered to obligate itself thereby."
The indemnifying agreement itself provided that the signers would indemnify Maryland against any and all liability for damages, loss, costs, charges and expenses of whatever kind or nature that the company may incur by reason of its bond and contains the following provision:
"In the event of claim or default under the bond(s) herein applied for, or in the event the undersigned shall fail to fulfill any of the obligations assumed under the said contract and bond(s), or in the event of claim or default in connection with any other former or subsequent bonds executed for us or at our instance and request all payments due or to become due under the contract covered by the bond(s) herein applied for shall be paid to the Companyand this covenant shall operate as an assignment thereof and the residue, if any, after reimbursing the Company as aforesaid, shall be paid to the undersigned after all liability of the Company has ceased to exist under the said bond(s), and the Company shall at its option be subrogated to all rights, properties and interest of the undersigned in said contract, or contracts."* * *
The evidence shows that several liens had been filed against some of the Lambert contracts and several other claims had been made against Maryland in connection with them. On October 1, 1975, Maryland notified the State of Louisiana and others of the assignment to it of the unpaid amounts on the contracts, and soon thereafter the various governing authorities began placing Lambert in formal default. Maryland then began shouldering the responsibility to complete the jobs, and by time of trial a number had been completed but some were still outstanding. The propriety of Maryland's *558 actions in that connection have been made the subject of the third suit between the parties, which we have referred to above in consolidation discussion, and the issue was also the major base of the reconventional demand filed in the first suit. We do not discuss that issue here because of the other litigation. What is at issue here, as explained by the trial judge, is the amount of money that Lambert could have collected through its operations under the contracts prior to Maryland's notification of the assignment and prior to the formal placing in default. The evidence shows that there was some amount of money on each contract that Lambert, had it made demand for progress payment prior to notification or default, would have been entitled to collect because it had partially completed its obligations to that extent. Additionally, there was an amount on these contracts that had been withheld as retainage by the public authority on prior progress payments made to Lambert, and which were being held by the public authority until completion and acceptance of the job, and furnishing of clear lien and privilege certificates. It is Lambert's contention that these funds, although not then received by Maryland, but received later beginning in March, 1976 should be considered as a credit towards payment of the promissory note indebtedness represented by the judgment of November 30, 1976. Maryland on the other hand contends that it was due that money on the assignment of Lambert's contract rights, and the money should be applied towards Maryland's bond obligations as security on the uncompleted contracts.
Maryland contends that it is entitled to apply the funds to the contractual obligations for three different reasons: (1) that it had a legal right of subrogation to the position of the owner under the law; (2) that, having paid off a number of the liens filed by materialmen and laborers, it was legally placed in their position to demand the funds of Lambert as reimbursement; and (3) that the express conventional assignments that were executed were for the security of the indemnity agreement given to Maryland to induce it to write the contract bonds. We see no need to discuss the first two issues, because we believe the obligation referred to above as well as the subsequent agreements entered into decisively show that the funds were assigned to Maryland for its bond obligation as security for the public works contracts.
We note that the assignment of the contract funds was created when the contract bonds were issued in reliance on the indemnity and assignment agreement referred to. Unless there exists some basis for changing that agreement, Maryland was entitled to the money to apply it under its bond and contract obligations. The trial judge was of the opinion that a subsequent agreement between the parties did change the allocation of those funds, and relied upon two documents simultaneously confected on May 31, 1974, which constituted the agreement between Maryland Casualty, the lending banks, and the Lamberts relating to an additional $2,000,000 loan made to Donald G. Lambert Contractor, Inc. to assist it in continuing in business.
That agreement came into existence because in the course of its operations, that corporation needed additional funds to stay in operation. The agreement was the basis for the judgment in the first suit between the parties and is explained more precisely therein. For our purposes here, we note simply that the Lambert corporation was indebted under various loans from The Bank of New Orleans and The Hibernia Bank in excess of $2,000,000. Maryland had considerable exposure on a number of public works contracts in which it acted as surety for the corporation, and which held some danger of inability of completion. In order to keep the corporation active, Maryland agreed that it would guarantee an additional loan of $2,000,000 to be made by The Bank of New Orleans for Lambert's account, and Lambert, on its part was required to furnish collateral surety of basically every asset the corporation and the individuals had. The agreement further pointed out the method by which payments were to be made, and how payments were to be allocated amongst the new debt and *559 the old debt as well as the debtors' interests. The trial court determined by reference to these documents that it was the intent of the parties to liquidate the new debt or loans first from all sources of income generated by Lambert and in reasons for judgment made the following conclusions concerning the documents.
"Paragraph 1 of the May 31, 1974 Lambert letter to Maryland and BNO (identified as P-13A and Exhibit # 1) refers to assignment of various collateral to Maryland in the indemnifying agreement contained in bond application forms executed by Lambert. Yet, a reading of the bond application indemnifying agreement reveals in the 3rd paragraph of section 2, that Lambert covenants, upon the occurrence of certain contingencies, to request the payment of all payments due or to become due under the construction contract insured to the surety (Maryland). No evidence of a request by Lambert to any of the public agencies involved to pay contract funds to Maryland has been offered in any of these consolidated proceedings.
"Paragraph 4 requires that all funds which LAMBERT CONTRACTOR may receive `from whatever source from this day until the NEW DEBT is paid' are to be deposited with the BNO in an account entitled `Donald G. Lambert Contractor, Inc.' The Court construes the phrase `from whatever source' to include the most obvious and major and perhaps sole source of revenue to LAMBERT CONTRACTOR, the contract funds themselves.
"Paragraph 4 goes on to provide that the funds in that account are `hereby pledged as collateral for the repayment of the NEW DEBT . . .'
"Paragraph `E' of the May 31, 1974 agreement executed by Maryland and the BNO, (P-13) in which Lambert's letter agreement of that date is referred to as `Exhibit 1', provides for the collateral given to be applied first to pay the NEW DEBT, then to pay the old debt, or the BNO CREDIT, and then to be shared in pari passu until the BNO is completely paid."
We reach a different interpretation of the documents. The May 31st agreement consisted of two documents, one a letter signed by the Lamberts relating to its obligation under the proposed new loan, and the other an agreement signed by BNO and Maryland, expressing the position of each of them in relation to Lambert, the guaranty of Maryland for the proposed new loan, and the method of payment to be utilized in the event of various occurrences. We first quote the agreement from Lambert's letter, which we believe expressly recognizes that the contract funds had already been assigned to secure the performance by the Lamberts of their indemnity obligations to Maryland under the public works contracts. the letter, addressed to Maryland and The Bank of New Orleans recites in pertinent part:
"To induce BNO to extend payment terms on its `BNO credit' (as defined in an agreement dated today between BNO and Maryland) and to induce Maryland to guarantee and BNO to advance said NEW DEBT, LAMBERT agrees as follows:
"1. LAMBERT recognizes that the assignment of contract funds, materials, equipment and rights in subcontracts made by LAMBERT to Maryland in the various indemnity agreements, heretofore executed by LAMBERT, are now executory. LAMBERT confirms the aforesaid indemnity agreements and the effectiveness of those assignments as of this date and agrees to execute, when called upon by Maryland, whatever documents may be required to evidence to third-parties the effectiveness of the assignment."
The document then proceeds to list the security devices which it will furnish to BNO and Maryland, stating in pertinent part this:
"2. LAMBERT agrees to proceed with diligent efforts to execute and record documents (in form reasonably satisfactory to counsel for BNO and Maryland) in *560 order to secure BNO and Maryland, with respect to the NEW DEBT and the BNO Credit, by:

* * * * * *
"d. a pledge and assignment and or chattel mortgage of whatever accounts receivable LAMBERT may have other than the contract proceeds covered by the assignment already anticipated in item 1 above."

* * * * * *
Near its conclusion, the document reiterates that the indemnity agreements are not changed by stating:
"The undersigned recognize that the indemnity agreements heretofore or hereafter given by LAMBERT to Maryland are not modified or altered by any of the transactions contemplated by this letter, except to the extent that the indemnities are made executory as set forth in paragraph numbered 1 above."
At this point we must remark that this document quite clearly states that the contract proceeds were not intended as collateral to secure loan payments, and that they had been in fact already assigned as collateral to secure the Lambert indemnity obligations to Maryland as surety under the public works contracts. However, we must continue in order to determine the effect of this document on the relationship between Maryland and BNO. We here note that Hibernia later participated in the Maryland-BNO agreement, and is in the same relationship with Maryland as is BNO.
The second document which comprises the agreement of May 31, 1974 was between BNO and Maryland. That agreement specifically states: "WHEREAS to induce BNO to make and Maryland to guarantee said new loan, and to induce BNO to extend payment of the BNO Credit, LAMBERT has given Maryland and BNO the letter attached hereto as Exhibit 1." Exhibit 1 is of course the May 31st letter we have just referred to. The Maryland-BNO agreement of itself does not so clearly delineate a recognition that the assigned contract funds are to be treated differently than other collateral securing the old loan and the proposed new loan. We quote the following pertinent provisions:
"WHEREAS, Maryland Casualty Company [Maryland] has executed surety bonds for Donald G. Lambert Contractor, Inc., principal, and holds indemnities from Donald G. Lambert Contractor, Inc. and from Donald G. Lambert and his wife, Sharon W. Lambert, as personal indemnitors, in which they agree to indemnify Maryland against loss on said bonds and have assigned the respective contract proceeds, materials, equipment on site and their subcontract rights to Maryland to secure the payment of said respective Indemnities; * * *"

* * * * * *
"E. All payments received from LAMBERT prior to any default in the NEW DEBT NOTES shall be applied first to the NEW DEBT. Should LAMBERT default in payment of the NEW DEBT, then Maryland shall pay same to BNO pursuant to paragraph B, and the collateral given pursuant to Exhibit 1 is to be used to satisfy without preference of either one over the other: (i) those obligations of LAMBERT to Maryland created by Maryland's payment to BNO of the NEW DEBT NOTES, and (ii) the obligations of LAMBERT to BNO under the BNO Credit; and the benefits of such collateral shall be divided between BNO and Maryland in proportion to the respective amounts of the aforementioned obligations of Lambert to BNO and Maryland."

* * * * * *
"G. In the event LAMBERT is placed in or seeks bankruptcy or similar arrangement under state law, Maryland and BNO shall attempt in good faith to work out a mutual course of action and to avoid attempts by one to gain undue advantage over the other. Similarly, Maryland and *561 BNO shall cooperate in good faith with respect to the collateral referred to in Exhibit 1 to assure that it is applied to their maximum benefit and as intended by this Agreement." * * *
When one considers the wording quoted above it can be said that while reference is made to the assignment of the contract funds that the document does not clearly state that those funds are not part of the "collateral given pursuant to Exhibit 1." In order to make that determination, one must refer again to the provisions of Exhibit 1, which clearly show a differentiation in treatment between the assignment stated in paragraph 1 thereof and the collateral delineated in paragraph 2, from which the assignment is specifically excluded. Certainly BNO must be held to be aware of the provisions of Exhibit 1 under their express attachment to its own signed agreement with Maryland.
Any doubt which may remain as to the intent of that agreement is dispelled by reference to an agreement of August 5, 1974, made several months after the May agreement and signed by Donald G. Lambert Contractor, Inc. through Donald G. Lambert President, The Bank of New Orleans and Maryland Casualty. That agreement states clearly the recognition of the prior assignments in the indemnity agreements. We quote:
"DONALD G. LAMBERT CONTRACTORS, INC. has assigned and intends to continue to assign accounts receivable to The Bank of New Orleans and Maryland Casualty Company of Maryland in accordance with the Louisiana Assignment of Accounts Receivable Law. The accounts assigned under this assignment do not include those contract funds, materials, equipment rights in subcontracts which have been made by this corporation to Maryland Casualty Company of Maryland and assigned in the indemnity agreements with Maryland Casualty Company of Maryland."* * *
Based upon these documents, it is our opinion that the trial judge erred in his interpretation of the documents and the consequent allocation or imputation of payments generated under the public works contract. Accordingly, we would reverse that portion of the judgment appealed from granting the Lamberts credit for those funds to be applied against the November 30, 1976 judgment.
Having decided the rights of the parties on the merits, we proceed to a consideration of some of the ancillary and interlocutory matters still pertinent to this litigation.
One of the first issues raised by the defendants in this case was the right of the plaintiffs to bring a suit of this nature. It is contended that two of the plaintiffs, Donald G. Lambert and Sharon W. Lambert were stockholders of the bankrupt corporation, Donald G. Lambert Contractor, Inc. and that they had no standing in court to enforce any obligations due to that corporation, particularly since it had become the subject of bankruptcy proceedings in the U. S. District Court for the Eastern District of Louisiana. This argument largely applies to the contract funds that may have been due the corporation under its public works contracts and has basically become moot because of our conclusion that these funds were not to be included as a credit on the judgment of November 30, 1976. However, we do point out that these two persons, together with the two corporate plaintiffs, were not bringing suit on behalf of the bankrupt corporation, but were bringing suit as judgment debtors as a result of a continuing guaranty agreement on promissory notes primarily owed by the bankrupt corporation. The nature of the petition is for an injunction to prohibit the seizure and sale of any of petitioners' property in accordance with execution of that judgment by a writ of fieri facias, on the grounds expressed in Code of Civil Procedure Article 2298(2), which reads as follows:
"Injunctive relief prohibiting the sheriff from proceeding with the sale of property seized under a writ of fieri facias shall be granted to the judgment debtor or to a third person claiming ownership of the seized property:

* * * * * *

*562 "(2) When subsequent to the judgment payment has been made, or compensation has taken place against the judgment, or it has been otherwise extinguished. If the payment, compensation, or extinguishment is for a part of the judgment, the injunction shall be granted to that extent, and the execution shall continue for the amount of the excess; * * *"
The plaintiffs have a right to bring a suit such as this under the plain terms of the article. The issues that remain in this suit are simply that the parties prayed for and received more relief than they were entitled to under that article both in the amount of the credit allowed, as we have discussed above, and in the nature of the injunction issued by the court. Pending the proceedings, the trial court issued a temporary restraining order and later a preliminary injunction enjoining the execution of the November 30, 1976 judgment until a final determination could be made as to the amount of credits allocated against that judgment. We believe the quoted article gave him authority to issue such a judgment, it being shown that a writ of fieri facias had issued and that certain property of the defendants was being seized for judicial sale. In the final judgment appealed from, we note that the trial judge did not grant a permanent injunction, but instead rendered a judgment on September 6, 1977, amended on November 9, 1977, to the effect of amending the judgment rendered on March 2, 1977, which was itself amended by the judgment of March 7, 1977. Inasmuch as all of these judgments relate to each other, we feel compelled to state at this point what we perceive the final judgment to be. From the March 7th judgment it was ordered, adjudged and decreed that the rule be made absolute and that the following credits be recognized against the judgment rendered November 30, 1976, in case # 184-822. The November 9, 1977 judgment delineated these credits against each of the judgment creditors by determining that the March 2nd amounts of reduction against principal should be further reduced by its proportionate share of an additional total credit of $1,741,204.30 so that the final judgment would consist of the following: For Maryland a reduction of its original judgment to $209,144.07, the judgment of Hibernia would be reduced to the principal amount of $18,683.01 and the judgment of BNO would be reduced in principal amount to $134,532.22. These sums would bear interest as accrued and provided in the notes originally sued upon until paid, and attorney's fees as provided in said notes upon principal and interest.
As we see it, the effect of allocating the reductions granted directly against the principal amount of the judgment rendered in the continuing guaranty suit on November 30, 1976, has the effect of amending that judgment, even though the first portion of the judgment herein would say that only a credit was to be allowed. We of course have already decided that the credits awarded were improper, but we do agree that the credits stated in the March 2nd judgment should be allowed.
We refer to the terms of Louisiana Civil Code Article 2164:
"The debtor of a debt, which bears interest or produces rents, can not, without the consent of the creditor, impute to the reduction of the capital any payment he may make, when there is interest or rent due.
"Every payment which does not extinguish both the principal and the interest, must be imputed first to the payment of the interest."
The original judgment of November 30, 1976 was based upon promissory notes which contained specific provisions for interest and attorney's fees and the judgment recognized these provisions, and indeed particularized them to a certain date. The amount of credit granted herein should be applied against that judgment in accordance with Article 2164 and the terms of that judgment.
In accordance with the views expressed herein, we decree that the judgment appealed from should be amended and reduced, and we reform that judgment to read as follows:
*563 IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Donald G. Lambert, Sharon W. Lambert, Lambert Aviation, Inc. and Lambert Construction Company, Inc. and against the defendants recognizing the following credits against the judgment rendered November 30, 1976 in case # 184-822 of the Docket of the 24th Judicial District Court for the Parish of Jefferson (No. 9646 of our Docket) as follows:
(1) That Maryland Casualty Company apply, as credit against the amounts awarded to it in the November 30, 1976 judgment, the sum of $1,204,727.62 which was received by Maryland on December 13, 1976 from bankruptcy proceedings # 75-2041 and # 76-169 in the United States District Court for the Eastern District of Louisiana, as delineated by L.C.C. Article 2164;
(2) That Hibernia National Bank in New Orleans apply, as credit against the amounts awarded to it in the November 30, 1976 judgment, the sum of $158,884.74 which was received on December 13, 1976 from bankruptcy proceedings # 75-2041 and # 76-169 in the United States District Court for the Eastern District of Louisiana, in accordance with the provisions of L.C.C. Article 2164;
(3) That The Bank of New Orleans and Trust Company apply, as credit against the amounts awarded to it in the November 30, 1976 judgment, (a) the sum of $1,453,769.41, being disbursements made to it on December 13, 1976 from bankruptcy proceedings # 75-2041 and # 76-169 in the United States District Court for the Eastern District of Louisiana plus (b) an additional $126,093.74 being the amount of funds held by the bank for the account of the judgment debtors or collected from the collateral furnished under the agreement of May 31, 1974, to be applied in accordance with L.C.C. Article 2164.
The appellants are assessed with the costs in the trial court and each party shall bear his own costs of appeal.
AMENDED AND AFFIRMED.
NOTES
[*] LEMMON, J., voted to grant a rehearing.
[1] The third suit, # 196-638, included and expanded the issue of Maryland's alleged illegal and improper conduct and resulting damages to Lambert raised in the reconventional demand in # 184-822. The consolidation was apparently upset and the case was later tried separately.