413 So.2d 1355 (1982)
Robert J. CARLYON, Plaintiff-Appellant,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant-Appellee.
No. 8715.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1982.
*1356 Stephen E. Everett, Alexandria, for plaintiff-appellant.
Gold, Little, Simon, Weems & Bruser, Robert G. Nida, Alexandria, for defendant-appellee.
Before CULPEPPER, SWIFT and DOUCET, JJ.
SWIFT, Judge.
Robert Carlyon filed this suit against Aetna Casualty & Surety Company (Aetna) to recover under a homeowner's policy certain "additional living expenses" totaling $15,000 allegedly incurred when his farm home was partially destroyed by fire on *1357 March 27, 1980. From a judgment in favor of the plaintiff in the amount of $3,567.57 with legal interest from judicial demand, but denying plaintiff's claim for penalties and an attorney's fee, the plaintiff has appealed.
The policy insured the plaintiff's dwelling against loss by fire and also provided coverage for the loss or damage of unscheduled personal property therein and for additional living expenses incurred if the premises became untenantable because of fire. The policy limits of such coverages were $44,000, $22,000 and $8,800, respectively.
The plaintiff settled his claims for damages to the dwelling for $20,500 and for the damage and loss of unscheduled personal property for $22,000, the latter being the full extent of the coverage. However, the parties were unable to settle the claim for additional living expenses, resulting in the present litigation.
The plaintiff contends the trial court erred in disallowing some of the claimed additional living expenses.
In its answer to the appeal the defendant asserts that the award to plaintiff for such expenses should be reduced from $3567.57 to $3159 and that the trial court erred in awarding legal interest on the sum of $3159 which was unsuccessfully tendered to plaintiff by the defendant and then deposited into the registry of the court.
Specifically, the plaintiff complains of the failure to include these living expenses in the award:

"1. Additional transportation
 expenses $ 264.24
 2. Rental deposit on
 apartment 100.00
 3. Sheets, pillows and towels
 purchased by plaintiff 213.25
 4. Cooking and eating
 utensils purchased by
 plaintiff 187.00
 5. Clothing purchased by
 plaintiff 150.00
 6. Estimates on repairs to
 appliances 62.80
 7. Dry cleaning and laundry 208.39
 8. Matt's Janitorial Service
 (for cleaning items and
 household property) 3,249.50"

A policy of insurance is a contract between the parties and is to be enforced in accordance with its terms when they are clear and unambiguous. Such a contract is to be given a fair, reasonable and sensible construction compatible with the apparent object and plain intention of the parties as expressed in words of the agreement. Ory v. Louisiana & Southern Life Ins. Co., 352 So.2d 308 (La.App. 4 Cir. 1977).
The applicable policy provision provides as follows:
"COVERAGE DADDITIONAL LIVING EXPENSE
"If a property loss covered under this policy renders the premises untenantable, this policy covers the necessary increase in living expense incurred by the Named Insured to continue as nearly as practicable the normal standard of living of the Named Insured's household for not exceeding the period of time required:
"1. to repair or replace such damaged or destroyed property as soon as possible; or
"2. for the Named Insured's household to become settled in permanent quarters; whichever is less."
* * * * * *
"This coverage excludes expense due to cancellation of any lease, or any written or oral agreement."
Another provision states that Aetna insures the plaintiff's property to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it costs to repair or replace the property.
The trial judge found that the plaintiff's claim for additional transportation expenses was more in the nature of a business expense than a living expense. He therefore concluded that it was not covered under the policy. The evidence of this claim consisted of gas receipts totaling $264.24 and the plaintiff's testimony that he incurred these additional transportation expenses in having to drive back to his home premises at least one and sometimes twice daily to feed his cattle and to plant his *1358 crops. Occasionally, he had to drive his sons to school because of rain. The plaintiff offered no evidence as to his transportation expenses before the fire and he had no record of the number of miles driven on these trips after the fire.
In our opinion the record supports the trial court's determination that the plaintiff failed to prove that Item 1 was an additional living expense covered by the policy. Certainly he was not clearly wrong in this respect.
In regard to Item 2, Mr. Carlyon testified that he paid $100 as a deposit on the apartment which he rented during the period his house was untenantable. He said that because he was unable to move from the apartment to his house until around August 4, 1980, he made an agreement with the landlord to accept the deposit as rent for this additional time instead of charging another whole month's rent.
Aetna offered convincing evidence that the repair work to the house could have been completed in 60 days. This would have been prior to July 31. The plaintiff offered no evidence as to why the repair work (which was done by his brother rather than the party who submitted the bid on which the settlement was based) took longer.
Under the express terms of the policy any expense incurred after the period of time required to repair the property "as soon as possible" were not covered. Since the repair work on the dwelling could have been completed before the end of July and the apartment rent for that month was included in the tender made by the defendant which is mentioned hereinafter, Item 2 was incurred beyond the 60 day period and thus was correctly excluded from coverage by the trial court, even though for a different reason.
Addressing Items 3 through 7, the evidence reveals that plaintiff had to buy some sheets, towels, clothing and kitchen utensils because his others were either destroyed by the fire or were being cleaned. Also, his laundry and dry cleaning bill for cleaning his smoke-damaged clothing and bedding was $208.39. Each of these items, including the cost of estimates of repairs to appliances listed as Item 7, was an expense of repairing or replacing personal property which had been damaged or destroyed by the fire and therefore fell within the coverage of the unscheduled personal property. Funds were made available to plaintiff to purchase such items very shortly after the fire occurred. Therefore, they were not additional living expenses as contemplated by the parties under the policy, but were recoverable under the loss or damage to unscheduled personal property provisions. The defendant ultimately paid its entire limit under that coverage and satisfied its obligation as to such losses.
As to the last item complained of by plaintiff on this appeal, the evidence reveals that Matt's Janitorial Service performed services costing $3249.50 for cleaning the walls and floors of the dwelling and cleaning some furniture, mattresses, dishes and a bottle collection damaged within the home. The contractor who bid the amount agreed to by the parties in settling the claim for repairs to the dwelling testified that his estimate included janitorial clean-up of the walls and floors of the house. Therefore the latter were expenses incurred as a result of the damage to the dwelling and would fall within the provision providing coverage for damages to the dwelling itself. The fact that plaintiff's brother did not include these charges as a cost of his repairs to the home would not alter the situation.
The expenses incurred as a result of cleaning, moving and storing property within the dwelling were expenses incurred in repairing the unscheduled personal property for which the policy limit was paid to the plaintiff.
The defendant contends that the trial court improperly awarded $614.05 for apartment and television rentals as additional living expenses incurred after the period of time required to repair plaintiff's home. We disagree.
*1359 As stated, the preponderance of the evidence is to the effect that the dwelling could have been repaired in 60 days. The evidence reveals that plaintiff received the funds from Aetna to repair the house on May 27, 1980, and that the work began immediately afterwards. Therefore, it should have been completed by July 27, 1980. The trial court properly awarded these rentals for the month of July as the house was untenantable until the end of that month.
The defendant also contends that the trial court erred in awarding legal interest on the sum of $3159 after April 3, 1981.
The record reveals that on October 24, 1980, the defendant sent a check in the amount of $3159 to the plaintiff as an "unconditional settlement" in an effort to conclude the claim for additional living expenses. Plaintiff filed this suit on February 12, 1981. On April 3, 1981, the defendant sent a letter to the plaintiff stating that the plaintiff could cash the $3159 check and reserve his right to litigate the balance claimed. On April 6, 1981, the plaintiff sent a letter to the defendant returning the check to Aetna and stating that he had previously advised its agent that he "would not accept this amount in settlement of the remaining claims on the terms of the policy." On April 24, 1981, the defendant deposited the sum of $3159 into the registry of the court as an unconditional tender of that amount.
In Williams v. Hanover Ins. Co. of New York, 351 So.2d 858 (La.App. 2 Cir. 1977), the court was confronted with a similar situation. In that case the plaintiff brought suit for damages to a live oak tree and shrubbery caused when the automobile of the defendant's insured collided with the tree. The trial court did not award legal interest on $130, which was allowed as damages to the shrubbery, because the defendant delivered to plaintiffs a partial payment draft for the $130 prior to suit. On appeal the plaintiffs sought legal interest on the partial payment. The court held the following:
"Plaintiffs contend that legal interest should be allowed because there was no legal tender. LSA-C.C. Arts. 2167, 2168. The circumstances do not constitute the legal tender contemplated by these articles. Nevertheless, the draft was delivered to plaintiffs and the proceeds were available long before institution of the suit. Plaintiffs could have collected the draft without prejudicing their claim for other damages. Jones, supra. Plaintiffs do not contend that the draft would not have been paid promptly upon presentation. Under these circumstances we hold plaintiffs are not entitled to recover legal interest on the $130."
In the present case, the proceeds of the $3159 check were definitely available to the plaintiff without prejudicing his claim to other disputed damages at least by April 3, 1981. Although such fund was not withdrawn by the plaintiff from the registry of the court until after the judgment was rendered, we conclude that under these circumstances he is not entitled to recover legal interest on the $3159 beyond April 3, 1981.
For the reasons assigned, the judgment appealed from is amended to: 1) Credit the defendant with the sum of $3159 thereon on April 3, 1981; 2) To award the plaintiff legal interest on $3159 from date of judicial demand until April 3, 1981; and 3) To award the plaintiff legal interest on the balance of the judgment, i.e., $408.57, from date of judicial demand until paid. In all other respects the judgment is affirmed. The costs of this appeal are to be paid by the appellant.
AMENDED AND AFFIRMED.