518 So.2d 1104 (1987)
Andrew PAYTON
v.
Wendell COLAR, et al.
No. CA-7200.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1987.
Rehearing Denied January 14, 1988.
*1105 William W. Rosen, Levy, Marx, Lucas & Rosen, New Orleans, for appellant.
Roch P. Poelman, Hebert, Mouledoux & Bland, New Orleans, for appellees.
Before GULOTTA, C.J., and GARRISON and WARD, JJ.
GULOTTA, Chief Judge.
Plaintiff appeals from a judgment dismissing his rule to calculate and compel the payment of the remaining balance due on a partially paid personal injury judgment. The issue to be decided is whether funds deposited as partial payment by a judgment debtor are to be first applied to principal or interest. Because LSA-C.C. Art. 1866 provides that, in the absence of the obligee's consent, the obligor of an interest bearing debt may not impute payment to the principal when interest is due, we conclude that partial payments by the judgment debtor must be applied first to reduce outstanding judicial interest before they can reduce the principal amount of the judgment.
In October, 1984, plaintiff recovered a personal injury judgment against Wendell A. Colar, New 77 Club, Inc., and Insurors Indemnity and Insurance Company, in solido, in the sum of $711,000.00 plus costs and interest from date of judicial demand (February 21, 1979). On February 4, 1985, the defendant insurer delivered to plaintiff's attorney a check for $305,610.00. This check was offered under the terms of "payment in full" and represented the insurance policy limits plus post judgment interest on the total judgment. Plaintiff's attorney rejected the amount as full settlement and returned the check. On March 1, 1985, defendant deposited $305,610.00 in the registry of the court. On April 9, 1985, plaintiff filed a "Motion to Withdraw the Funds from the Registry of the Court", stating that there was a substantial dispute about other funds being due in excess of the amount deposited. Pursuant to an order on April 12, 1985, plaintiff withdrew the funds.
On May 12, 1986, in Payton v. Colar, 488 So.2d 1271 (La.App. 4th Cir.1986), writ denied 494 So.2d 332 (La.1986), this court held that Insurors Indemnity was liable in solido with other defendants to the plaintiff for the full amount of the judgment of $711,000.00, plus interest from the date of the judicial demand and all costs. After writs were denied by the Supreme Court, the defendant insurer tendered $931,586.30 to plaintiff, who refused to accept this amount as full satisfaction. On October 15, 1986, defendant filed a motion to deposit the funds in the registry of the court, and on that same day plaintiff withdrew the funds.
On October 28, 1986, plaintiff filed a "Rule to Compel Satisfaction of Judgment and Calculate and Assess Interest". In this rule, plaintiff disputed the "calculation and application of funds" paid by the insurer, and asked for the principal amount of $56,735.93, plus interest, which plaintiff contended was the remaining balance still unpaid. Without written reasons, the trial judge dismissed the rule with prejudice.
Appealing, plaintiff contends that under LSA-C.C. Art. 1866 all payments made to an interest bearing debt must first be applied to interest unless otherwise agreed to by the obligee. According to plaintiff, when defendant deposited the $305,610.00 into the registry of the court on March 1, 1985, the amount of judicial interest due at that time was $444,335.98. Plaintiff argues that the $305,610.00 payment should have first been applied to satisfy the interest, leaving $138,725.89 in interest and the entire $711,000.00 principal still unpaid after the partial payment. As a result, plaintiff contends that until defendant deposited $931,586.30 in the court registry, interest continued to be calculated on the $711,000.00 judgment. Furthermore, according to plaintiff, after the $931,586.30 payment was made, the full amount of interest owed at the time of payment was satisfied, and the principal was reduced to $56,735.93. *1106 Plaintiff thus argues that defendant still owes that judgment balance plus interest from date of judicial demand, costs, and attorney's fees.
On the other hand, defendant contends that when a debtor makes a good faith tender of an undisputed portion of a judgment to a plaintiff, the plaintiff is not entitled to recover legal interest on the amount tendered after it has been either presented to plaintiff or deposited in the court's registry. Because the insurer never disputed that it was liable for at least $300,000.00 of the judgment principal, plus post judgment interest, defendant argues that its initial tender of $305,610.00 was in good faith, and that the deposit of that amount in the court registry reduced the judgment principal to $411,000.00 and the interest by $5,610.00. Defendant contends that after the March 1, 1985 deposit, interest is calculated on $411,000.00 of the judgment principal. According to defendant, the subsequent payment of $931,586.30 fully satisfied all outstanding principal and interest, and the trial judge properly dismissed plaintiff's rule for additional interest. We disagree.
LSA-C.C. Art. 1866, relied on by plaintiff, provides as follows:
An obligor of a debt that bears interest may not, without the obligee's consent, impute a payment to principal when interest is due.
A payment made on principal and interest must be imputed first to interest.
This article is found in Title III of Book III of the Civil Code, which is entitled "Obligations in General". LSA-C.C. Art. 1757, which is also included in Title III, provides that obligations can arise from contracts as well as from the law, as in instances of wrongful acts.[1] Thus, an offense or quasi offense under LSA-C.C. Arts. 2315 et seq. creates an obligation on the part of the wrongdoer in favor of the injured party.
It is well settled that an obligation, when reduced to judgment, is merged therein and no longer exists as a distinct obligation, but it is deemed as having acquired the status of the thing adjudged. Sailing Wiping Cloth Co. v. Sewell, Inc., 419 So.2d 112 (La.App. 2nd Cir.1982); Glazer Steel Corp. v. LaRose Shipyard, Inc., 372 So.2d 250 (La.App. 1st Cir.1979); Agricultural Enterprises, Inc. v. Morgan, 147 So.2d 40 (La.App. 2nd Cir.1962); Mackee v. Cairnes, 2 Mart., M.S. 599 (1824); Abat v. Buisson, 9 La. 417 (1836); West Feliciana Railroad Co. v. Thornton, 12 La.Ann. 736 (1857); The Citizens Bank of Louisiana v. Hancock, 35 La.Ann. 41 (1883); Lalanne v. Payne, 42 La.Ann. 152, 7 So. 481 (1890); Cassiere v. Cuban Coffee Mills, 225 La. 1003, 74 So.2d 193, (1954). Likewise, a debt reduced to a judgment also acquires the status of the thing adjudged. Cassiere v. Cuban Coffee Mills, supra; Mackee v. Cairnes, supra; Abat v. Buisson, supra; West Feliciana R. Co. v. Thornton, supra; Citizens Bank of Louisiana v. Hancock, supra; Lalanne v. Payne, supra. LSA-C. C. Art. 2924, which is also found in Book III of the Civil Code, defines "judicial interest" as legal interest on a sum that is the object of a judicial demand.[2]
Reading these codal provisions in pari materia, we conclude that a tort judgment bearing judicial interest is a "debt that bears interest" within the meaning of LSA-C.C. Art. 1866 and that a judgment *1107 debtor may not, without the obligee's consent, impute a payment to principal when interest is due. Thus, a partial payment on a tort judgment must be imputed first to judicial interest before it can be applied to reduce the principal amount of the judgment.
In Lambert v. Cronvich, 373 So.2d 554 (La.App. 4th Cir.1979), writ denied 376 So. 2d 960 (La.1979), we applied former LSA-C.C. Art. 2164, the precursor to present LSA-C.C. Art. 1866, to a money judgment rendered on promissory notes that contained specific provisions for interest and attorney's fees. In Lambert, the trial judge applied partial credits to reduce the principal amount of the judgment. Although we agreed with the application of certain credits, we amended the judgment after concluding that the credits should be applied in accordance with LSA-C.C. Art. 2164,[3] i.e., if the payment does not extinguish both interest and principal, it should be applied to the interest first. Thus implicit in Lambert was a conclusion that a money judgment containing interest is a debt bearing interest within the meaning of the codal article. Applying the Lambert rationale, we conclude that LSA-C.C. Art. 1866 applies to the money judgment in our case, even though we are dealing with a tort judgment rather than a judgment on a promissory note.
Having determined that LSA-C.C. Art. 1866 applies in the instant case, we conclude that the payment made by defendant on March 1, 1985 should have first been applied to satisfy the interest owed, and the remainder, if any, applied to reduce the principal. According to our calculations set out below, the $305,610.00 did not reduce the principal but merely reduced the interest owed on March 1, 1985. Consequently, Insurors Indemnity still owes plaintiff the remaining judgment principal of $57,538.60 plus judicial interest until paid. Our calculations are as follows:

Interest at 7%
 February 21, 1979-September 11, $ 77,588.84
 1980
 569 Days
Interest at 10%
 September 12, 1980-September 10, 70,903.56
 1981
 364 Days
Interest at 12%
 September 11, 1981-March 1, 1985 296,395.00
 1,268 Days
 INTEREST DUE AS OF MARCH $444,887.40
 1, 1985
Payment by defendant to Registry of
the Civil District Court, March 1,
1985 (305,610.00)
Interest at 12% (continued
 March 2, 1985-October 16, 1986 138,847.50
 594 Days
TOTAL INTEREST DUE AS OF $278,124.90
OCTOBER 16, 1986
Plus Principal $711,000.00
 ___________
 SUB TOTAL $989,124.90
Paid to Registry, Civil District Court
[applied to interest firstLSA-C.C. ($931,586.30)
 1866]
BALANCE OF PRINCIPAL DUE $ 57,538.60

Although the cases[4] relied on by defendant do apparently stand for the proposition that judicial interest ceases to run upon an amount tendered in partial payment of a judgment, none of the cited opinions discusses LSA-C.C. Art. 1866 or its precursor, former LSA-C.C. Art. 2164, which specifically provides that a partial payment must be credited first to interest before it can be applied to reduce the principal.
In Schmidt v. Holmes, 487 So.2d 577 (La.App. 4th Cir.1986), one of two solidary judgment debtors forwarded a check for his one half virile share of the tort judgment including interest and costs. The plaintiffs in Schmidt refused to accept the payment on the grounds that they were *1108 entitled to full satisfaction of the judgment from either or both of the solidary judgment debtors and that the acceptance would prejudice their rights to the full satisfaction of the judgment. The debtor then sent a letter to the plaintiff stating that it was not its intention that plaintiffs should waive any rights to ultimately collect the full judgment against them in the event the other debtor would not be able to pay. Two months later, after the second solidary debtor tendered its one-half of the total judgment principal plus costs and interest, the plaintiffs then accepted the earlier tender by the first obligor. Because the first debtor's tender did not include the interest accrued from the original date of that tender to the date of the second debtor's tender, plaintiffs thereafter filed a "Rule to Compel Satisfaction of Judgment and To Assess Interest against Defendant". The trial court in Schmidt dismissed plaintiffs' claims for the additional interest, and we affirmed the trial court's decision.
By allowing a solidary debtor to pay less than the full amount of a judgment and thereby interrupt the accrual of interest on the amount paid, Schmidt and the cases there directly conflict with our interpretation and application of LSA-C.C. Art. 1866 in the instant case. The Schmidt opinion is silent as to LSA-C.C. Art. 1866, however, and an argument based on this codal article was apparently not presented to the court. Nonetheless, to the extent that our earlier opinion conflicts with our reasoning in the instant case, we hereby overrule Schmidt.[5]

CLAIM FOR PENALTY AND ATTORNEY'S FEES
Plaintiff further contends that the defendant insurer should be required to pay a 10% penalty of the total judgment and reasonable attorney's fees under LSA-R.S. 22:658, because it did not tender the full interest "undisputably due". In support of his contention, plaintiff argues that the insurer has acted in bad faith in violation of a State policy that interest is due from the date of judicial demand.
LSA-R.S. 22:658(A) provides:
All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee, or any party in interest.
Insofar as the above statute refers only to a claim between an insured and his own insurer, it does not apply in the instant case between an injured plaintiff and the defendant tortfeasor's liability insurer. We therefore deny plaintiff's request for additional penalties and attorney's fees.
Accordingly, the judgment is reversed and set aside. Judgment is now rendered ordering defendant, Insurors Indemnity and Insurance Company, to pay plaintiff the sum of $57,538.60, plus interest from date of judicial demand (February 21, 1979), and all costs.
REVERSED AND RENDERED.
BARRY, J., concurs and would distinguish Schmidt v. Holmes from Payton v. Colar.
KLEES, J., dissents in part from the Court's En Banc decision to overrule the Schmidt opinion.
LOBRANO, J., dissents in part for the reasons expressed by KLEES, J.
KLEES, Judge, dissenting in part and concurring in part.
I do not agree that our decision in the instant case necessitates the overruling of Schmidt v. Holmes and accordingly dissent from that part of the opinion. In Schmidt, one of two solidary debtors tendered payment of one-half the total principal, costs and interest due on the date of the tender. Plaintiffs refused to accept this amount until six weeks later, at which time they *1109 received a check from the other debtor for one-half the total judgment, costs and interest due on the date of the second tender. After accepting both checks, plaintiffs filed a Rule against the debtor who had made the initial tender seeking to recover the interest that had allegedly accrued on his half of the principal from the date of the original tender until the date that plaintiffs actually accepted the payment. We held that plaintiffs were not entitled to the additional interest because they could have accepted the initial tender without prejudicing their rights to collect the entire judgment from either defendant. Schmidt, supra at 578.
Schmidt is distinguishable from the instant case because the plaintiffs in Schmidt did not contend that the initial payment should have been imputed to interest before principal, but rather that they were entitled to additional interest because they chose not to accept the payment until six weeks after it was originally tendered.
Civil Code article 1866, upon which the majority relies, states that "[t]he obligor of a debt that bears interest may not, without the obligee's consent, impute a payment to principal when interest is due." (Emphasis added). In Schmidt, the plaintiffs and defendants were in agreement as to which portion of each payment constituted principal and which portion constituted interest; at issue was the date at which the interest ceased to accrue. By not making an argument under article 1866, the Schmidt plaintiffs tacitly consented to the defendants' allocation of the funds. Accordingly, the court's interpretation of article 1866 in the instant case does not conflict with Schmidt.
While I agree with the majority's holding in this case, I can foresee potential problems with the application of C.C. Art. 1866 to solidary obligations which this case does not address.

ON APPLICATION FOR REHEARING
PER CURIAM.
In a petition for rehearing, the defendant insurer contends that LSA-C.C. Art. 1866 applies only to debts bearing "conventional interest", i.e., a charge by an obligee for the obligor's right to use the obligee's money over a period of time. According to defendant, legal interest on a judicial demand is a form of "moratory" damages or penalty that is a separate debt from the principal amount of the judgment, and a judgment debtor can therefore choose to apply his partial payment toward either the judgment principal or the judicial interest pursuant to LSA-C.C. Art. 1864.[1]
In support of this contention, defendant cites the 18th Century French legal scholar, Pothier, as follows:
"The rule which we have established, that the application ought to be made to the interest before the principal, does not hold with regard to interest due by a debtor, from the time of a judicial demand being made, as a penalty for his delay; such interest is awarded by way of damages, and forms a distinct debt from the principal; and what the debtor pays is applied rather to the principal than to this interest.... This is established by an arret [decision] of 1649 and another of 1706."[2]
Although Pothier's works are influential as a source of the Code Napoleon, we do not find this passage persuasive in our case. Article 1254 of the Code Napoleon of 1804, which is the French counterpart to our present LSA-C.C. Art. 1866, makes no exception for moratory interest in stating *1110 the rule for imputing payments.[3] The 19th Century commentators Aubry and Rau have noted that the French redactors did not adopt Pothier's distinction between the two types of interest:
"Pothier (No. 571) teaches that this rule [of applying payment to interest before principal] applied in the past to compensatory interests only and not to moratory interests. Since Article 1254, however, did not reproduce this distinction it seems that it should not be admitted today. Delvincourt, II, p. 556; Favard, Rép., Imputation, § 3; Larombière, III, Art. 1254, No. 4; Zachariae, § 320, note 5. But see: Duranton, XII, 192; Marcadé, on Art. 1254, No. 3."[4]
In addition to this authority, we note that Jean Domat, another French legal scholar whose writings influenced the redactors of the Code Napoleon and the Louisiana Civil Code, has recognized that interest can arise from four causes: by contract, by the nature of an obligation, by law, or "... as a punishment of the debtor who defers payment after the creditor has made his demand in a court of justice, both of his principal, and of the interest due for default of payment."[5] Unlike Pothier, Domat notes that a payment on a debt should be applied first to the discharge of the interest, even if the interest is "due by a sentence of a court of justice":
"If a debtor makes a payment to discharge debts which of their nature bear interest, such as that of a marriage portion, or what is due by virtue of a contract of sale, or the same be due by a sentence of a court of justice, and the payment be not sufficient to acquit both the principal and the interest due thereon; the payment will be applied, in the first place, to the discharge of the interest, and the overplus to the discharge of a part of the principal sum. [Emphasis ours]."[6]
Based on these authorities, we reaffirm our interpretation of LSA-C.C. Art. 1866 as expressed in our initial opinion. As we have noted, LSA-C.C. Art. 1866 is found in Title III ("Obligations in General") of Book III of the Louisiana Civil Code. LSA-C.C. Art. 1866 makes no distinctions between contractual debts or judgment debts, or between conventional interest and judicial interest. Pothier's observations of early French law on this issue have not been incorporated in either the Code Napoleon or the Louisiana Civil Code, and do not persuade us to reach a different result in our case.
We further distinguish Lone Star Industries v. American Chemical, 480 So.2d 730 (La.1986), and on rehearing 491 So.2d 1333 (La.1986), cited by defendant. In Lone Star, $62,678.94 was deposited in the registry of the court by American Chemical's surety at the beginning of trial. After trial, a judgment was rendered against American Chemical for $132,785.31 plus interest and costs. On appeal, a second defendant, Strickland, was cast solidarily liable with American Chemical for $100,000.00 of the judgment debt.
The only issue in the Lone Star case was the proper allocation of the $62,678.94 payment: should it (1) be first applied to satisfy the $32,785.31 amount for which American Chemical was solely liable, or (2) should the entire amount of the payment be applied to the $100,000.00 obligation owed by both defendants in solido. The Supreme Court held that the payment should first be applied to cancel completely American Chemical's sole liability for $32,785.31, *1111 and the remaining $29,893.63 of the payment should then be applied to reduce the $100,000.00 solidary liability of American Chemical and Strickland, leaving a balance of $70,106.37, plus interest and costs due from the defendants.
Because Lone Star involved only the respective liabilities of two obligors for different portions of a single judgment debt, the cited case did not address our problem of allocating a partial payment between judgment interest and principal. Furthermore, because the payment was made during trial in the Lone Star case, the Supreme Court was not confronted with accrued interest after a post-judgment delay as in our case. The Lone Star decision, therefore, is inapposite to the instant case, and does not compel us to change our interpretation of LSA-C.C. Art. 1866 as set forth in our original opinion.
Accordingly, defendant's petition for a rehearing is denied.
REHEARING DENIED.
NOTES
[1] LSA-C.C. Art. 1757 provides:

Obligations arise from contracts and other declarations of will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts.
[2] LSA-C.C. Art. 2924 provides, in pertinent part:

A. Interest is either legal or conventional.
B. (1) Legal interest is fixed at the following rates, to wit:
(a) At twelve percent per annum on all sums which are the object of a judicial demand, whence this is called judicial interest; and * * * *
(2) The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows:
(a) Prior to September 12, 1980, the rate shall be seven percent per annum.
(b) On and after September 12, 1980, until September 11, 1981, the rate shall be ten percent per annum.
(c) On and after September 11, 1981, the rate shall be twelve percent per annum.
[3] LSA-C.C. Art. 2164 provides that:

"The debtor of a debt, which bears interest or produces rents, cannot, without the consent of the creditor, impute to the reduction of the capital any payment he may make, when there is interest or rent due.
"Every payment which does not distinguish both the principle and the interest must be imputed first to the payment of the interest."
[4] Schmidt v. Holmes, 487 So.2d 577 (La.App. 4th Cir.1986); Williams v. Hanover Insurance Company of New York, 351 So.2d 858 (La.App. 2nd Cir.1977); Boudreaux v. Riley Buick, Inc., 415 So.2d 970 (La.App. 2nd Cir.1982); Carlyon v. Aetna Casualty and Surety Company, 413 So.2d 1355 (La.App. 3rd Cir.1982), and Mamou Farm Service, Inc. v. Hudson Insurance Company, 488 So.2d 259 (La.App. 3rd Cir.1986).
[5] In accordance with our internal rules, our opinion in the instant case has been submitted to all judges of this court, and a majority of them have voted to overrule the Schmidt decision.
[1] LSA-C.C. Art. 1864 provides:

"An obligor who owes several debts to an obligee has the right to impute payment to the debt he intends to pay.
"The obligor's intent to pay a certain debt may be expressed at the time of payment or may be inferred from circumstances known to the obligee."
[2] Pothier, A Treatise On The Law of Obligations, or Contracts, trans. William David Evans (Philadelphia: 1826).

Although the passage cited by defendant is numbered "534" in the Evans translation, it is numbered "571" in the French edition of Pothier's works. See II Oeuvres De Pothier, Nouvelle Edition (Paris: 1821)
[3] C.N. 1804, Art. 1254 provides:

"The debtor of a debt which bears interest or produces arrearages, cannot, without the consent of the creditor, impute the payment which he makes on the capital, in preference to the arrearages or interest; a payment made on the capital and interest but which is not integral, is first imputed to the interest."
[4] Aubry and Rau, Cours de Droit Civil Francais, § 320, Footnote 4, trans. Louisiana State Law Institute (1965).

See also Fuzier-Herman, Code Civil, Art. 1254, Footnote 2, (Paris: 1896), citing similar authorities on this issue.
[5] Domat, The Civil Law in Its Natural Order, § 1958, trans, by William Strahan (Boston: 1850)
[6] Domat, § 2284.