521 So.2d 788 (1988)
Othell WATERS, et vir, Plaintiffs-Appellants,
v.
McDANIEL RECREATION CENTER, INC., et al, Defendants-Appellees.
No. 19,365-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Rehearing Denied March 24, 1988.
Writ Denied May 13, 1988.
*789 Evans, Feist & Mills by George H. Mills, Jr., Comegys, Lawrence & Jones by Wm. Paul Lawrence, II, Frank H. Spruiell, Jr., Shreveport, for plaintiffs-appellants, Othell Waters and James B. Waters.
Mayer, Smith & Roberts by Kim Purdy, Shreveport, for defendants-appellees, McDaniel Recreation Center, Inc. and American Cas. Co.
Office of the Attorney General, William J. Guste, Jr. by L. Adrienne Dupont, Baton Rouge, for defendant-appellee, State of La.
Before MARVIN, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
The plaintiffs, Othell Waters and her husband, James B. Waters, appeal the judgment of the trial court in favor of the defendant, the state of Louisiana. For the reasons stated herein, we affirm.

FACTS
At approximately 7:00 p.m. on October 23, 1983, the plaintiffs traveled to the McDaniel Recreation Center in Bernice, Louisiana, to vote in the gubernatorial election. Mrs. Waters, who was 65 years old at the time of the accident, and her husband were taken to the center by Clara Mae Coleman, a worker for one of the candidates. Mrs. Coleman's job on the day of the election was to take voters to the polls. The Union Parish Police Jury had selected the recreation center as a polling place. A concrete walkway leads from a gravel parking lot to the door of the recreation center. This walkway consists of two segments of different lengths and slopes. The first segment extends a distance of 10 feet 3 inches from the door and has a very gentle slope. The second section is 9 feet 2½ inches long and has a steeper slope. As Mrs. Waters was exiting the center after she voted, she slipped on the lower portion of the walkway, fell and broke her left leg. The plaintiffs brought suit against McDaniel Recreation Center, Inc. (the owner of McDaniel Recreation Center) and the Union Parish Police Jury (the subdivision of the state responsible for conducting the election at the center).
On September 27, 1985, the plaintiffs filed an amended petition adding the following defendants: American Casualty Company, the insurer of McDaniel; Commercial Union Insurance Company, the insurer of the police jury; and the state of Louisiana through the Parish Board of Election Supervisors for Union Parish. An exception of no cause of action filed by McDaniel and American Casualty was referred to the trial on the merits.[1]
Before trial the plaintiffs settled their claim against the police jury and its insurer, Commercial Union. The trial court rendered judgment in favor of all of the remaining defendants and against the plaintiffs. The trial court found that at the time of the accident the McDaniel Recreation Center was being used as a polling place within the meaning of former LSA-R. S. 9:2798 and that the walkway, as a means of access to the center, was part of the polling place. Because that statute provides that the owner of such premises is exempt from liability for injuries occurring while the premises are being used as a polling place, the trial court sustained the exception of no cause of action filed by McDaniel and its insurer, American Causalty *790 Company, and dismissed the suit against them.
The court also found that the state was not liable under either the theory of strict liability or of negligence. The plaintiffs appealed the judgment in favor of the state[2] asserting three assignments of error which present the single issue of whether the trial court erred in failing to assign liability for this accident to the state.
On appeal the plaintiffs assert the theories of both strict liability and negligence. In a case alleging these alternate theories of liability on one having custody of immovable property, the difference between the two theories is the proof that each requires. Under a negligence theory, plaintiff must prove that the owner or custodian knew or should have known of the unreasonable risk of harm posed by the property. Under a strict liability theory, plaintiff is relieved of proving this knowledge. Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985); Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982). Under either theory, the plaintiff has the burden of proving the following: (1) that the defendant had custody of the property causing the damage; (2) that the property was defective because it had a condition that created an unreasonable risk of harm; and (3) that the defect was the cause in fact of the injury. Carter v. Board of Supervisors of Louisiana State University, supra.
There is no question that the state, the appellee here, had custody of the walkway by virtue of former LSA-R.S. 9:2798(A), which provides that:
"(A) Except as provided in Subsection (B) of this Section, the state of Louisiana hereby assumes responsibility and liability for any injury to a person or damage to property which occurs upon property used for a polling place during the time for which the property is used and for which the owner of the property would be liable except for the provision of this Section. The person suffering such injury or damage shall have no right of action against the owner, but shall have a cause of action and a right of action against the state for such injury or damage."[3]
The central question then is whether the walkway had a defect which created an unreasonable risk of harm which was the cause in fact of the accident.
There was a great deal of discussion at the trial about the slope of the walkway and the provisions of various building and safety codes regarding the appropriate slope. Dennis Howard, a safety consultant testifying for the plaintiff, went to the accident site and took various measurements and photographs. His measurements revealed that the upper part of the walkway had a slope of 1 in 15, which means that there is a one-inch vertical fall to every 15 inches of horizontal distance. The lower part of the walkway on which Mrs. Waters fell had a slope of 1 in 6.19; thus, there was a one-inch vertical rise or fall to every 6.19 inches of horizontal distance.
Mr. Howard compared his findings to the requirements of several codes and guidelines: the Life Safety Code, the American National Standards Institute (ANSI) Code, the Standard Building Code, and guidelines prepared by the National Safety Council. The Life Safety Code and the Standard Building Code (Southern Building Code) recommend a maximum slope of 1 in 8 for new construction. However, the ANSI Code recommends a slope of 1 in 12. It should be noted that all three codes deal with new construction, and that the purpose of the Life Safety Code and the ANSI Code are to provide design guidelines for safety in extreme circumstances.
The evidence reflects that the Life Safety Code establishes minimum standards for safe methods of exiting buildings in case of *791 an emergency. The ANSI Code establishes standards for methods of access for handicapped persons. The Standard Building Code, formerly the Southern Building Code, provides minimum requirements for the safe design, construction and maintenance of buildings.
Mr. W. Blaine Paxton, a registered architect, testified for the defense. He stated that he had not been to the scene but had viewed the pictures which were admitted in evidence and had accepted the measurements of the plaintiff's expert, Mr. Howard, in making his evaluations. Mr. Paxton testified that in a case such as this the designer of the building would be obligated to design to the building code adopted by the municipality. However, the record reflects that the city of Bernice has not adopted a building code. Mr. Paxton indicated that in such a case a designer's plans would only have to satisfy the state fire marshal. However, in this case, the walkway was constructed subsequent to the construction of the building and therefore the walkway would not be subject to approval by the fire marshal. He concluded his discussion of design approval by testifying that under the extant circumstances the guide for the party laying the walkway would be "common sense and good judgment."
It should be noted that in discussing the Life Safety Code, the code providing parameters for design for emergency exit, Mr. Paxton testified that if the city had approved a building code, a walkway such as this may have a slope of 2 in 12 (which reduces to 1 in 6) if approved as an exception by the local authority.
Finally, both experts testified with respect to the question of whether handrails were required and the codes introduced into evidence also deal with the question of handrails. The record reflects that the Standard Building Code (Southern Building Code) requires handrails if there is a rise of more than 23¼ inches above grade or "more than three risers," a riser being a standard step which was defined as being 7¾ inches high. However, the more demanding emergency code (Life Safety Code) requires handrails if the rise is more than 30 inches above grade. The requirement specified in the handicap code (ANSI) is difficult to discern with our lack of expertise. Plaintiffs' expert said, however, that this code requires handrails in the instant circumstance. The plaintiffs' expert also testified that the rise at issue was 26 inches.
Based on this evidence, the trial court determined that the evidence was not sufficient "to prove that the ramp was unreasonably dangerous," and further determined that there was "nothing unusual about the walkway." On this record we cannot find that this determination to the effect that no defect was shown in the walkway is manifestly erroneous. We are particularly influenced in this view by our observation of the pictures in evidence. These simply show what appears to be a normal walkway from a gravel drive to a building. The walkway is placed directly on top of the ground along the natural contour of the land and thus has no significant drop-off on either side. We do note that both experts opined that the Life Safety Code and the ANSI Code require handrails for the bottom portion of the walkway. However, it is clear from this testimony that the lower portion of the walkway only marginally exceeds the standards of these code. More importantly, however, is that the former of these standards is established for walkways used for emergency exits and the later is for walkways which are used by handicapped persons. There was no emergency occurring at the time of this accident and this plaintiff is not handicapped.
We therefore have no difficulty determining that the trial judge's conclusion that this walkway was not defective per se is not clearly wrong on this record. The more difficult question is whether or not the possible addition of gravel to the walkway would make it defective. Indeed, the plaintiff, the plaintiff's grandson, Darryl Wright, and the plaintiff's driver, Mrs. Coleman, all reported seeing gravel on the walkway immediately after the plaintiff had fallen. The trial court did not address *792 this question and simply determined that the walkway was not defective and further opined that the accident was more than likely caused by plaintiff's inattention.
Rather than resolve the factual issue of whether gravel was on the walkway, we assume its presence arguendo and determine that even in that case the walkway is not defective. Assuming the presence of gravel, the instant case appears quite similar to Crochet v. Freeman, 504 So.2d 1064 (La.App. 1st Cir.1987). In Crochet, the plaintiff allegedly slipped on shell or gravel on an irregularly shaped landing which sloped from the doorway down "a few inches to ground level" to a shell-covered parking lot.
The presence of this material is not a defect in the premises but is a defect on the premises, although it may still constitute an unreasonably dangerous condition. Crochet, supra; Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3rd Cir.1981). Since the defect is one on the premises, strict liability is inapplicable. Crochet, supra.
The duty of this custodian was well defined by the Third Circuit in Levert v. Travelers Indemnity, 140 So.2d 811 (La.App. 3rd Cir.1962), and somewhat recently approved in Lear v. United States Fire Insurance Company, 392 So.2d 786 (La.App. 3rd Cir.1980). As explained in Levert and approved in Lear:
The duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved. The occupier thus owes a duty to avoid reasonably foreseeable danger to his invitee and to keep his premises safe from hidden dangers in the nature of traps or pitfalls in that they are not known to the invitee and would not be observed and appreciated by him in the exercise of ordinary care. This includes the duty of reasonable prior discovery of such unobservable dangerous conditions of the premises, and correction thereof or a warning to the invitee of the danger.
On the other hand, the occupier does not insure an invitee against the possibility of accident. The invitee assumes all normally observable or ordinary risks attendant upon the use of the premises. The occupier is not liable for an injury to an invitee resulting from a danger which is observable or which should have been observed by the invitee in the exercise of reasonable care, or from a danger which the invitee should reasonably have appreciated before exposing himself to it.
Levert v. Travelers Indemnity, supra, at 813.
Just as in Crochet, supra, we determine that the gravel is not a foreign object but is rather a substance from an immediately adjacent parking lot which had been traversed by a number of persons similarly situated as the plaintiff without accident. It should have been obvious to a reasonably prudent observer that gravel was likely to be present. Indeed, over 400 people voted at this location without another incident on the day of this accident.
We therefore determine that if gravel was present as contended by the plaintiff, it did not present such an unreasonable condition in this innocuous walkway as to create a dangerous condition. We emphasize the innocuous nature of this walkway by including as a part of this opinion plaintiffs' exhibit P-13 (F), the picture which we feel gives the most accurate representation of the appearance of the walkway in the context of the surroundings.
*793 
For the reasons aforesaid, the judgment appealed is affirmed at the appellant's cost.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, SEXTON, LINDSAY, MARVIN and JASPER E. JONES, JJ.
Rehearing denied.
NOTES
[1] Other exceptions and claims were filed by various parties but are not at issue on this appeal.
[2] The plaintiffs do not appeal the trial court's judgment in favor of McDaniel and American Casualty on their exception of no cause of action.
[3] Repealed by Act 669 of 1986.