575 So.2d 876 (1991)
Helen SPIVEY, Plaintiff-Appellant,
v.
SUPER VALU, et al., Defendants-Appellees.
No. 22169-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1991.
*877 Brittain, Williams, McGlathery, Passman and Sylvester by Russell L. Sylvester, Natchitoches, for plaintiff-appellant, Helen Spivey.
Davenport, Files & Kelly by Michael J. Fontenot, Monroe, for defendants-appellees, Super Valu and Mount Airy Ins. Co.
Before SEXTON, LINDSAY and VICTORY, JJ.
SEXTON, Judge.
Plaintiff appeals the district court's judgment that found defendants were liable for her personal injuries sustained when an automatic door closed on her while she was exiting the defendant supermarket, but which assigned 70 percent of the fault for the accident to her. She also complains of the district court's assessment of quantum, failure to assess damages for her losses of income and earning capacity, and the failure to assess penalties and attorney fees against the defendants for their failure to pay her medical expenses after amicable demand. We amend and, as amended, affirm.
On September 11, 1987, plaintiff was exiting the Jonesboro Super Valu grocery store when she was struck on the left wrist by an automatic door as it swung closed. According to the testimony of both the plaintiff and the bag boy who was taking her groceries out for her, he had to force the door open in order to extricate her left arm. The plaintiff also testified that the door struck her head prior to striking her arm.
The plaintiff received emergency room treatment and consulted her family physician several days after that treatment, the details of which we will relate more thoroughly, infra.
Plaintiff eventually brought suit for the injuries which she alleged she sustained in the accident. Subsequent to trial, the court found the defendant grocery store and its insurer liable but assessed plaintiff with 70 percent of the fault in the accident and reduced her damages accordingly. The court awarded $10,000 in general damages and $1,000 for medical expenses (both of which were reduced by 70 percent), but denied any claim for loss of wages or earning capacity and denied plaintiff's request for penalties and attorney fees for the defendants' failure to pay her medical expenses on demand.
Plaintiff now appeals, assigning four errors. Defendants have not appealed or answered the appeal.

FAULT
In her first assignment of error, plaintiff complains of the district court's allocation of 70 percent of the fault for the accident to her. Defendants argue that the district court's allocation of fault is a matter of discretion and that this court should not disturb that determination unless it is clearly wrong.
In her petition, plaintiff alleged that the defendants were liable on the basis of both strict liability and negligence. In a case alleging these alternate theories of liability on one having custody of immovable property, the difference between the two theories is the proof that each requires. Under a negligence theory, plaintiff must prove that the owner or custodian knew or should have known of the unreasonable risk of harm posed by the property. Under a strict liability theory, plaintiff is relieved of proving this knowledge. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); Waters v. McDaniel Recreation Center, 521 So.2d 788 (La.App.2d Cir.), writ denied, 524 So.2d 520 (La.1988).
Under either theory, the plaintiff has the burden of proving the following: (1) that the defendant had custody of the property causing the damage; (2) that the property was defective because it had a condition that created an unreasonable risk of harm; and (3) that the defect was the cause-in-fact *878 of the injury. Waters v. McDaniel Recreation Center, supra.
The circumstances of how the plaintiff came to be injured by the automatic door are not clear. Only two witnesses testified regarding the event. The plaintiff testified the door struck two blows in quick, rapid succession, without completely re-opening between blows, a phenomenon which we will characterize as "double clutching" for lack of a more succinct description of this series of events. She also indicated she had looked off only briefly prior to being struck by the door. On the contrary, the bag boy carrying her groceries said that he was looking at her at the time of the incident and that he only saw the door close on her once.
The trial court found the defendant "at fault in the operation of the door," but further held that the plaintiff, as a regular customer who had "used the exit door many times, should have been more familiar with the operation of the door and should have been more attentive...." Based on this statement and the trial court's assessment of 70 percent of the fault to the plaintiff, it appears that the trial court did not credit the plaintiff's version of the event.
The evidence indicated that the door would open when a motion sensor mounted above the doorway detected movement in an area immediately in front of the door. Thereafter, the door would close on a time delay; however, the automatic closing would be overridden and the door would remain open if there was any weight placed on a pressure-sensitive mat located just outside the doorway. Additionally, when closing, the door was prevented from swinging past the doorway itself by an appropriately located door jamb.
It appears from the record evidence[1] that one could be in the threshold, but neither within the "view" of the motion sensor nor on the mat. Thus, it seems clear, the door would automatically close after the passage of a predetermined time sequence, regardless that a person happened to be in harm's way, as long as that person was neither within the range of the motion sensor nor on the mat.
We now turn to whether the district court erred in assessing 70 percent of the fault for the accident to the plaintiff. In order to do so, we are instructed by Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La. 1985), to consider certain factors:
(1) Whether the conduct resulted from inadvertence or involved an awareness of danger;
(2) How great a risk was created by the conduct;
(3) Significance of what was sought by the conduct;
(4) The capacities of the actor, whether superior or inferior; and
(5) Any extenuating circumstances which might require the actor to proceed in haste without proper thought.
It is obvious from the record that plaintiff was neither aware of the risks to which she was exposed nor was there anything to alert her to the potential danger.
Super Valu, on the other hand, as custodian of the door, knew or should have known of the risks which it presented. It had day-to-day supervision of the premises and had a duty to detect any problems and to correct or replace the defective items. In placing an automatic door on its premises, Super Valu undoubtedly intended to enhance the convenience and safety of its customers by making ingress and egress available even when one's arms were full or otherwise inconvenienced, a matter of significant social value. However, this goal was considerably diminished by the door's design. The door presented a significant risk to anyone who happened to pause too long in the threshold.
Finally, we must consider the extent to which there may have been extenuating circumstances which required the plaintiff to proceed in haste without proper thought. *879 Actually, the contrary seems to be the case. The risk appears to be magnified if a patron tarries at the threshold, or else the motion sensor or pressure sensitive mat would have prevented the door from closing.
In summary, it is clear that the door closed on the plaintiff. Just how it did so is uncertain. Although the trial court seems not to have credited the plaintiff's version of the accident, it seems unlikely that the plaintiff could have been struck by the door unless her attention had been diverted elsewhere. It further would appear that she was proceeding through the door fairly slowly. Thus, the only possible actions of the plaintiff which may have contributed to the accident were that she may have been somewhat inattentive and she was probably proceeding slowly. Under these circumstances, we agree with the plaintiff that the district court was manifestly in error in assessing 70 percent of the fault for the accident to her.
Furthermore, considering the nature of any possible conduct of the plaintiff that could have contributed to the accident, as contrasted with the design of the door and the defendant store's duty to the plaintiff, we conclude that the district court erred in assessing plaintiff with any degree of fault. It can be reasonably expected at stores such as Super Valu that patrons will be exiting with large quantities of goods, either in hand or in a cart. Patrons should not have to expect that an automatic door will close on them if their exit is insufficiently swift or if they are temporarily inattentive. In other words, it is our view that plaintiff should expect to be able to exit the instant premises without expecting an automatic door to close on her. Any possible inattention on the part of the plaintiff did not cause her to stumble or fall. If she was inattentive, it simply made her unaware that a door which had automatically opened for her was likewise automatically closing on her. We conclude that, under the instant circumstances, it is a hazard she should not expect to have to guard against.
While the accident may not have occurred "but for" some inadvertence on the part of the plaintiff, we conclude any such arguable conduct should not be considered a legal cause of the accident. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Nichols v. Nichols, 556 So.2d 876 (La.App. 2d Cir.), writ not considered, 561 So.2d 92 (La.1990); Fowler v. State Farm Fire & Casualty Insurance Co., 485 So.2d 168 (La.App. 2d Cir.), writ denied, 487 So.2d 441 (La.1986). Stated somewhat differently, the Watson factors have lead us to a duty/risk determination absolving the plaintiff due to the nature of the defendant's duty to safeguard the plaintiff against the risk she presented. See A. Johnson, Comparative Negligence and the Duty/Risk Analysis 40 La.L.Rev. 319 (1980). The district court judgment will be amended accordingly.

GENERAL DAMAGES
Plaintiff argues that the district court abused its discretion in awarding her only $10,000 in general damages. Defendants note that district court awards of general damages are entitled to much discretion and should not be reversed in the absence of an abuse of that discretion.
In reviewing a district court's award of general damages, the initial inquiry must always be directed at whether the district court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the "much discretion" afforded to the trier of fact in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion that the award may, on appeal, for articulated reasons, be considered either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); Ellison v. Valley Forge Insurance Company, 571 So.2d 726 (La.App. 2d Cir.1990); Nichols v. Stone Container Corporation, 552 So.2d 688 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1262 (La.1990).
In the instant case, plaintiff testified that she was struck by the door first in the head, then on the left wrist. Her testimony of having been hit on the head was not corroborated by anyone at the scene, nor *880 was it disputed. On the other hand, her claim of being hit on the wrist was specifically corroborated by Super Valu's bag boy, Greg Andrews, who testified that he had to force the door open for the plaintiff to remove her arm.
Following the incident, plaintiff was treated in the emergency room of the Jackson Parish Hospital, where X-rays disclosed no evidence of fractures or any dislocations in the forearm or hand area. The emergency room physician outfitted the plaintiff with a wrist brace and prescribed anti-inflammatory medication. She was advised to follow up her emergency room visit with a visit to her family physician.
On the following Monday (three days after the accident), plaintiff was seen by her family physician, Dr. Raymond Dennie, who assumed responsibility for the primary care for plaintiff's injuries. Based on the history plaintiff provided to him, Dr. Dennie diagnosed a mild concussion (a "bump on the head"), resulting in headaches and a minor cervical injury. In addition, plaintiff had a contusion and sprain to the left wrist, with swelling of the wrist characterized as an "acute traumatic synovitis," or inflammation of the tissues overlying the left wrist joint.
Dr. Dennie outfitted plaintiff with a sling and placed her on Feldene, an anti-inflammatory drug. He estimated that plaintiff's recovery would take approximately three months from the date of the accident.
Plaintiff made regular visits to Dr. Dennie's office for reevaluation and therapy associated with her wrist and neck injuries. Early in October, she was advised to cease using the wrist brace and sling so that she could regain range of motion in her wrist, which advice plaintiff liberally ignored. On December 15, plaintiff had no more objective findings, Dr. Dennie felt that she had reached maximum recovery, and she was discharged with no indication of any residual effects.
Nearly a year later, on November 23, 1988, plaintiff returned to Dr. Dennie with renewed complaints about her head and wrist. He found some limitation on the range of motion in her neck, but found that it was otherwise within normal limits. With regard to her wrist, he diagnosed recurrent, traumatic synovitis, but refused to relate it back to the accident at Super Valu.
Dr. Dennie testified that plaintiff's problems were completely resolved in three months, with no residual effects. He was at a loss to explain why plaintiff continued to complain of recurring problems with her head and wrist or why she apparently had not sought out medical assistance for nearly one year despite her claims of continued pain. He testified that there were additional tests which could be run to determine whether plaintiff's complaints were genuine or exaggerated, but the record indicates that plaintiff did not undergo them.
In summary on this issue, the plaintiff's treating physician testified that her head and wrist problems were fully resolved within the three month period which he originally estimated would be the time required for plaintiff's recovery. Under all of the foregoing circumstances, we are of the view that the district court did not abuse its discretion in the award of general damages. Reck v. Stevens, supra; Wactor v. Pickens Lumber Company, 505 So.2d 815, 819 (La.App. 2d Cir.), writ denied, 508 So.2d 827 (La.1987).

LOST WAGES AND EARNING CAPACITY
Plaintiff next complains that the district court failed to award her damages for lost wages or diminution of earning capacity. Defendants simply argue that plaintiff failed to prove these items of damage to the satisfaction of the district court.
Loss of wages can be computed on the amount that plaintiff would in all probability have been earning at the time of trial, and damages for loss of past wages are not necessarily limited to a multiplier of the amount earned at the time of injury. Spangler v. North Star Drilling Company, 552 So.2d 673 (La.App. 2d Cir.1989). Damages for loss of earning capacity are calculated on a person's ability to earn money rather than on what he actually *881 earned before injury. Hunt v. Board of Supervisors of Louisiana State University Agricultural and Mechanical College, 522 So.2d 1144 (La.App. 2d Cir.1988).
Plaintiff has a duty to prove any damages claimed from lost wages and the district court's determination that she has failed to meet her burden of proof will not be reversed on appeal absent an abuse of discretion. Accord, Ellison v. Valley Forge Insurance Company, supra.
The trier of fact must be afforded much discretion in determination of damages for loss of future income and earning capacity where the evidence clearly shows that such damages have been proven, even though not capable of proof to a mathematical certainty; however, the trier of fact must have a reasonable basis for its discretion and where the record contains no factual basis for such an award, the appellate court must reverse or amend the award to conform to the evidence. Bailes v. United States Fidelity and Guaranty Insurance Company, 512 So.2d 633 (La.App. 2d Cir. 1987).
Plaintiff testified that she had previously run her own business, the Mini Spot, which served food and beverages. However, she acknowledged closing the business several months, perhaps a year, prior to her accident at Super Valu because her mother was seriously ill, and she needed to spend significant time with her. She testified that she had intended to reopen the business after the death of her mother, but the accident prevented her from doing so.
Plaintiff also testified that the accident prevented her from continuing her employment with the American Legion hall, where she managed the facility. She would go to the hall three or four times per week, mostly on weekends, to serve customers, accept deliveries, clean up, and restock supplies.
Although she argues that she was unable to continue or to reestablish either employment due to the injuries she sustained in the accident, specifically the injury to her wrist, plaintiff admitted at trial that she had employees at the Mini Spot and "didn't have a lot to do. I had help doing it for me." Additionally, plaintiff acknowledged that she was authorized to hire help at the American Legion hall if necessary, but she felt no need to do so because there "wasn't that much" to do.
After reviewing the record, we must agree with the defendants. Plaintiff claimed to be unable to work after the accident, but her own testimony is to the contrary. Both of her pre-injury jobs were essentially managerial in nature and could have been pursued despite her injuries had plaintiff been so inclined. Plaintiff conceded that in both the Mini Spot and American Legion jobs, there simply was not much to do that she was incapable of doing herself or that was not already being done by hired help. We find no error in the failure of the trial court to award damages for lost wages or lost earning capacity.

PENALTIES AND ATTORNEY FEES
Plaintiff's final argument is that the district court erred in failing to award her penalties and attorney fees under LSA-R.S. 22:658 for the failure of Mt. Airy Insurance Company, Super Valu's liability carrier, to pay her medical expenses under the medical payments coverage provision of Super Valu's liability policy. The insurance company responds that plaintiff's argument presents a novel legal issue under the circumstances of this case. Therefore, it argues that it cannot be arbitrary or capricious because the unsettled state of the law means that its refusal to pay plaintiff's medical bills prior to liability being clearly established was not unreasonable.
The medical payments coverage at issue is contained in the following clause of Super Valu's liability policy:
III. PREMISES MEDICAL PAYMENTS COVERAGE The company will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expenses incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury arises out of (a) a condition in the insured premises or (b) operations with respect to which the *882 named insured is afforded coverage for bodily injury liability under the policy.
All insurers issuing any type of contract, other than life (LSA-R.S. 22:657), health and accident (LSA-R.S. 22:657), and workers' compensation (LSA-R.S. Title 23, Chapter 10) policies, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured or any party in interest. LSA-R.S. 22:658 A(1). Failure to make such payment within 30 days after receipt of such satisfactory written proof and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, or one thousand dollars, whichever is greater, payable to the insured, together with all reasonable attorney fees for the prosecution and collection of such loss. LSA-R.S. 22:658 B(1).
This statute is penal in nature and, consequently, must be strictly construed. Hart v. Allstate, 437 So.2d 823 (La.1983). Penalties and attorney fees are not assessed unless it is clearly shown that the insurer was arbitrary, capricious, and without probable cause in refusing to pay. McClain v. General Agents Insurance Company of North America, 438 So.2d 599 (La.App. 2d Cir.), writ denied, 442 So.2d 458 (La.1983). Further, this statute applies only between an insurance company and its insured, not between an injured plaintiff or claimant and the alleged tortfeasor's insurance company. Payton v. Colar, 518 So.2d 1104 (La.App. 4th Cir.1987); Guillory v. Gulf South Beverages, Inc., 506 So.2d 181 (La.App. 5th Cir.1987).
At the outset of our consideration of plaintiff's argument, we note first that plaintiff is not an insured under Super Valu's policy, either by virtue of being a named insured on the policy's declaration page or by virtue of the inclusive definition of the term "insured" under the policy. We further note that the policy's medical payments clause is not couched in terms of coverage without regard to liability. There are two specific conditions under which medical payments are said to be due. The second, labeled (b), clearly requires liability. The other circumstance, labeled (a), is "a condition in the insured premises." While not predicated on liability, it would appear that in most instances this clause would be triggered by some liability.[2]
Plaintiff argues that her position is supported by Hart v. Allstate, supra, wherein the supreme court held that an insurance company's arbitrary and capricious failure to pay an insured under the medical payments coverage of an auto liability policy would subject the company to penalties and attorney fees under LSA-R.S. 22:658. Plaintiff notes that Hart was concerned with medical payments under an auto liability policy, but asserts that it should apply by analogy to the medical payment coverage under the premises liability policy at issue.
In Hart the defendant insurer of a host vehicle in which the plaintiff was a guest passenger was held liable for penalties and attorney fees in accordance with LSA-R.S. 22:658 for its failure to pay certain of plaintiff's medical bills under the medical pay provisions of the host driver's policy. The Hart court also held that LSA-R.S. 22:658 was applicable to an uninsured motorist claim but that plaintiff was not entitled to penalties and attorney fees under her uninsured motorist claim under the circumstances of that case. Thus it is important to note that implicit in the Hart court's decision is that the plaintiff there was a named insured.
Therefore, plaintiff's argument ignores that a key element of the statute is not the type of coverage at issue, in this case medical payments, but the relationship between a claimant and an insurance company, which is lacking in this case. The fact that insurance policies may benefit the public insofar as claimants against the insured are in the nature of third party beneficiaries of the contract between the insured and the insurance company does not make *883 a claimant an insured for purposes of LSA-R.S. 22:658. The medical payment clause in the instant liability policy does no more than provide $1000 of coverage for medical expenses which are incurred under the specific conditions there set out, one of which specifically contemplates the insured's liability and the other of which would appear to contemplate liability under most circumstances. We agree with the trial court that the plaintiff is not entitled to penalties and attorney fees under LSA-R.S. 22:658.

CONCLUSION
In summary, we have determined that the district court judgment should be amended to reflect that plaintiff was not at fault in the instant action and should be affirmed in all other respects.
Accordingly, the third paragraph of the judgment of the district court is amended and it is ordered that the assessment of fault to plaintiff Helen Spivey is zero percent for her injuries in comparison with an assessment of 100 percent fault on the part of the defendant Super Valu. In all other respects, the judgment of the district court is affirmed. All costs of this appeal are assessed against the defendants.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] There is no photographic evidence of the installation, location, or arrangement of the door, sensor, and pressure-sensitive mat.
[2] However, we do recognize that there may be several "conditions" in the insured premises that might cause an accident for which liability might not exist.