702 So.2d 66 (1997)
William STEGALL and Daniel Back, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 29986-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1997.
*68 John Milkovich, Shreveport, for Appellant.
Casten & Pearce by Marshall R. Pearce, Shreveport, for Appellee.
Before HIGHTOWER, WILLIAMS and GASKINS, JJ.
WILLIAMS, Judge.
In this personal injury action, the plaintiff, Daniel Back,[1] appeals the trial court's judgment, contending that the trial court erred in awarding inadequate general damages, in refusing to assess penalties and attorney fees against the defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), and in assessing the appellant with one-half of the court costs. For the following reasons, we affirm.

FACTS
This action arises as a result of an automobile accident that occurred on March 8, 1994, in Shreveport, Louisiana. Plaintiff was the sole passenger in a 1985 Ford F-150 pickup truck which was owned and being driven by William Stegall, plaintiff's employer. Plaintiff was seated on the right, passenger side of the vehicle. The other vehicle involved in the accident, a 1976 Monte Carlo, was being driven by Jerry Smith.
Stegall and plaintiff were traveling south on Creswell Street, while Smith was traveling east on Herndon Street. Smith, failing to yield to the approaching traffic, drove through the flashing stop light and the stop sign on Herndon and collided with Stegall's pickup truck at the intersection of Creswell and Herndon. Upon initial impact, Smith's vehicle struck the right side of Stegall's vehicle, the side on which plaintiff was seated. The second impact involved contact along the right side of Stegall's vehicle and the left side of Smith's vehicle. After a third impact, Stegall's vehicle collided with a utility pole located on the southeast corner of Creswell and Herndon before coming to rest.
Emergency medical services paramedics treated the plaintiff at the scene for face lacerations, a possible neck fracture, soft tissue injuries of the neck and chest and confusion. Thereafter, plaintiff was transported to Schumpert Medical Center. Dr. Richard Harrell examined plaintiff and documented his injuries, which included a mild concussion. On March 14, 1994, plaintiff returned to Schumpert Medical Center where he was hospitalized for three days. According to the medical evidence, plaintiff complained of migraine-type headaches, dizziness, ringing in the ears and some loss of memory.
Both parties stipulated that Jerry Smith was entirely at fault in causing the accident. Because Smith was an uninsured driver, State Farm provided coverage for plaintiff's injuries through Stegall's uninsured motorist (UM) coverage section of his automobile insurance policy. Plaintiff filed this action for damages alleging that State Farm failed to tender a fair amount in damages for his injuries and to perform a reasonable investigation into the accident and resultant injuries.
The trial court awarded the plaintiff $7,421.23 in special damages and $7,500 in general damages. The judgment also provided that State Farm was entitled to a credit in the amount of $11,764.29 toward the amount of damages assessed against it. Judgment was granted in favor of State Farm and against plaintiff dismissing any and all claims against State Farm for damages, penalties and attorney fees under LSA-R.S. 22:1220 and LSA-R.S. 22:658. Finally, *69 court costs were assessed equally between the plaintiff and State Farm. Plaintiff appeals.

DISCUSSION

General Damages
Plaintiff argues that because of the severity of his injuries, the amount of general damages awarded by the trial court was inadequate.
LSA-C.C. Art. 2324.1 provides that in the assessment of damages, much discretion must be left to the judge or jury. To modify an award for general damages, an appellate court must find that the trial judge or jury has abused the "much discretion" accorded by the statute. Ponville v. Travelers Ins. Co., 340 So.2d 331 (La.App. 1st Cir.1976). With respect to the award of general damages, each case must be weighed and evaluated according to its own particular facts and circumstances. Mullin v. Vessier, 400 So.2d 1192 (La.App. 1st Cir.1981).
The primary objective of general damages is to restore the injured party in as near a fashion as possible to the state he was in at the time immediately preceding his injury. Thibodeaux v. USAA Cas. Ins. Co., 93-2238 (La.App. 1st Cir 11/10/94), 647 So.2d 351. The factors to be considered in assessing quantum for pain and suffering are severity and duration. Thibodeaux v. USAA, supra; Glasper v. Henry, 589 So.2d 1173 (La.App. 4th Cir.1991), writ denied, 594 So.2d 1315 (La.1992). There is no rule or standard of law fixing or establishing the amount of recovery and each case, consequently, must rest on its own set of facts. Reck v. Stevens, 373 So.2d 498 (La.1979); Cummings v. Nixon, 442 So.2d 1291, (La. App. 3rd Cir.1983).
In Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court noted that:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
In reviewing an award of damages, a comparative analysis of awards in other cases should be undertaken only after the appellate court has found an abuse of discretion. Day v. Silver Oak Casualty, Inc., et al., 28,566 (La.App.2d Cir. 8/21/96), 679 So.2d 486; Thibodeaux v. USAA, supra. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Hae Woo Youn v. Maritime Overseas Corp, supra.
In the instant case, plaintiff argues that, as a result of the accident of March 8, 1994, he suffered a closed head injury which resulted in a permanent brain injury. Plaintiff testified that some of the symptoms that he continues to experience are difficulty in sleeping, confusion, lack of patience and memory lapse. Plaintiff denies having experienced any of these symptoms prior to the accident.
In addition to the medical treatment plaintiff received on the day of the accident, and during his three-day hospital stay at Schumpert Medical Center, the record reflects that plaintiff received additional medical treatment for his head injury.
On March 15, 1994, plaintiff was examined by Dr. Michael Gooszen, an internal medicine specialist, who opined that plaintiff probably suffered from post concussion syndrome following his closed head injury. On March 15, 1994, plaintiff was also examined by Dr. Robert Schwendimann, a neurologist, who noted that plaintiff suffered, among other things, some memory loss, light headedness, a ringing in the ear (tinnitus) and migraine-type headaches. On March 16, 1994, plaintiff was again examined by Dr. Gooszen, who further *70 diagnosed plaintiff as suffering from post-traumatic headaches as a result of the closed head injury.
During the time of the above medical treatment, plaintiff was also seen by Father Donald Heacock, BCD, a licensed professional counselor, who diagnosed plaintiff as exhibiting behavior consistent with closed head injuries. Additionally, Dr. James Wiseman, a chiropractor, examined and treated plaintiff for a soft tissue injury and noted that plaintiff suffered from headaches, dizziness and ringing in his ears. Finally, plaintiff was examined by defendant's independent medical examiner, Dr. Paul Ware, a specialist in psychiatry and neurology. Dr. Ware also reported that plaintiff had suffered a closed head injury.
Plaintiff testified that since the accident, he spends approximately five dollars each week on over-the-counter medication for headaches and that he takes about two to eight pills a day. He stated that before the accident, he had never experienced daily headaches. According to the plaintiff, he now has a headache every day and a migraine headache approximately once every ten days. Plaintiff also contends that as a result of the accident, he cannot communicate on a level that will allow him to work with others. Because he has difficulty understanding basic instructions, he lost his job with Stegall, has not been able to work for anyone else and has become self-employed. Plaintiff also testified that since the accident, it is difficult for him to operate a motor vehicle. According to plaintiff, he panics and forgets where he is and what he is doing. He testified that he often passes streets and has to concentrate and remind himself of his destination. Plaintiff testified that he has "spacing-out," "out-of-body-type" experiences when he drives or when he is at work. Plaintiff was adamant that none of these problems were present before the accident. On cross-examination, plaintiff admitted that he had a long history of alcohol and drug abuse dating back to when he was in the ninth grade. However, plaintiff stated that there were periods of time when he did not use either drugs or alcohol.
In an effort to support his contention that his head injury was permanent and had "profoundly impaired his capacity to function in life," plaintiff offered the testimony of family members and friends, along with the testimony of Father Donald Heacock and Dr. Gooszen.
Amy Lynn Deforrest, plaintiff's sister, testified that there has been a drastic change in plaintiff's behavior since the accident. In particular, she noted his tendency to fall asleep in the middle of a conversation and that almost every time he came to visit her, he had a headache. Other friends and family members also testified that the plaintiff complained of headaches and that he was not functioning mentally on the same level as he had functioned before the accident. Plaintiff's lay witnesses agreed that, in comparing Back's demeanor before and after the accident, there was definitely a change for the worse.
Father Heacock testified that plaintiff suffered a closed head injury. However, he admitted that he was not aware of plaintiff's history of substance abuse at the time of his diagnosis. Dr. Gooszen confirmed that the automobile accident of March 8, 1994 caused the plaintiff's closed head injury. Dr. Gooszen also testified that closed head injuries can vary from mild to severe.
The record reflects that the medical witnesses all agreed that the plaintiff suffered some type of closed head injury as a result of the accident. As stated above, Dr. Paul Ware, a specialist in psychiatry and neurology, examined plaintiff at the defendant's request. He also testified that the effects of a closed head injury can range from none to severe. Dr. Ware performed a neurological and psychiatric evaluation, gathered information concerning plaintiff's social history and administered psychological testing. Dr. Ware concluded that there was no evidence to support any long term injuries resulting from the automobile accident and that the result of plaintiff's psychological test suggested conscious exaggeration or faking. Dr. Ware stated there was no evidence of memory impairment, cognitive dysfunction or disorientation. Dr. Ware confirmed plaintiff's 22-year history of alcohol and substance *71 abuse and opined that the symptoms plaintiff complained of[2] could be the result of a history of substance abuse. Dr. Ware diagnosed the plaintiff as suffering from a closed head injury and opined that plaintiff had fully recovered within three weeks to a month after the accident.
At the conclusion of the trial, the trial court noted the plaintiff had the burden to prove the cause and the nature of his injuries by the preponderance of the evidence. The trial court concluded that plaintiff had sustained a closed head injury and a soft tissue injury as a result of the accident. The trial court determined that plaintiff is entitled to six weeks compensation for the closed head injury, with consideration for some extended residual effects, and four weeks compensation for his soft tissue injury. The trial court specifically found for the record that the plaintiff's history of substance abuse contributed significantly to the plaintiff's present symptoms and complaints. It then awarded the plaintiff $7,500.00 in general damages.
Although the trial court indicated that plaintiff suffered a closed head injury as a result of the accident, the court apparently did not conclude that all of plaintiff's symptoms were a result of the accident. There is ample evidence in the record to support this conclusion. Plaintiff admitted to having a substance abuse problem and also admitted that he had experienced severe headaches prior to the date of the accident. Plaintiff's testimony also revealed that with the exception of the independent medical examination by Dr. Ware, he had not sought any medical treatment since his visit to the chiropractor in March 1994. Dr. Ware opined that the duration of plaintiff's injury was from three weeks to one month. The record indicates that plaintiff returned to work one month after the accident. Further, plaintiff testified that he is now self-employed and he has doubled his salary since the accident.
After carefully reviewing all of the evidence, we conclude that the trial court was not clearly wrong in finding that plaintiff sustained a closed head injury of limited duration and did not abuse its discretion in awarding plaintiff $7,500.00 in general damages. This assignment of error lacks merit.

Liability for Statutory Penalties
The plaintiff contends that State Farm breached its duty of good faith and fair dealings by refusing to tender a fair amount in damages for his injuries and failing to perform a reasonable investigation into the accident and resultant injuries. Based on this contention, plaintiff urges that the trial court erred in not assessing State Farm with statutory penalties and attorney fees.
LSA-R.S. 22:1220 provides that an insurer owes a duty of good faith and fair dealing to its insured. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. An insurer who breaches these duties is liable for any damages sustained as a result of the breach. LSA-R.S. 22:658 authorizes recovery of attorney fees in the instance where the insurer fails to make payment to any insured within thirty days of receipt of satisfactory proof of loss from the insured or any party in interest. Spivey v. Super Valu, 575 So.2d 876 (La.App. 2d Cir.1991).
The record reveals that State Farm's claims representative contacted the plaintiff within eight days of the accident. On April 14, 1994, plaintiff began sending letters to State Farm demanding payment of medical bills. By the time trial began, State Farm had paid plaintiff approximately $11,764.29, which included the amount of plaintiff's medical bills. Further, both the severity and duration of plaintiff's head injury were disputed at trial.
Considering the heavily contested issue of the severity of plaintiff's head injury and the amount in damages ultimately awarded by the trial court, we find that the trial court's conclusion that State Farm had not violated LSA-R.S. 22:658 and LSA-R.S. 22:1220 was not clearly wrong. The assigned error lacks merit.

*72 Court Costs

Finally, the plaintiff contends the trial court erred in assessing him with one-half of the court costs. Plaintiff argues that there was no showing that he caused costs to be incurred needlessly. He also urges that brain injury cases are inherently technical and difficult to try.
The trial court has great discretion in assessing court costs and its assessment will not be disturbed in the absence of an abuse of that discretion. State of Louisiana, Department of Social Services In The Interest of C.S.P. v. Holloway, 26,527 (La. App.2d Cir. 1/25/95), 649 So.2d 114. Absent some equitable reason, court costs are not assessed against a wholly prevailing party. Miller v. Keal, 29,564 (La.App.2d Cir. 5/7/97), 694 So.2d 569. When a prevailing party is taxed with the cost of litigation, it is usually because that party in some way incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against that litigant. Wells v. Allstate Insurance Co., 510 So.2d 763 (La. App. 1st Cir.1987).
The record reflects that the plaintiff anticipated calling approximately thirty-seven witnesses and showing forty-five exhibits with the trial lasting sixteen hours. State Farm submitted a list consisting of approximately six witnesses and twelve exhibits, estimating a trial time of one day. The trial actually lasted nine days. The trial court observed that the case took far too long to try but did not assess any fault to any particular lawyer. Instead, the court assessed costs equally to both parties.
Neither party can be considered the wholly prevailing party in this case. Plaintiff recovered damages for injuries sustained in the accident and State Farm was successful in defending against the plaintiff's demand for penalties and attorney fees.
Under the circumstances, the trial court did not abuse its discretion in assessing court costs equally to each party. This assignment of error is without merit.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant, Daniel Back.
AFFIRMED.
NOTES
[1] The claim of the driver, William Stegall, was settled prior to trial. This appeal only concerns the claim of Daniel Back, the guest passenger.
[2] The plaintiff related the following symptoms to Dr. Ware: impaired concentration, depression, anxiety, confusion, lack of patience, personality changes, difficulty sleeping and problems with communication and speech.