806 So.2d 954 (2002)
Latasha HARRISON, Plaintiff-Appellee,
v.
Mary Lee RICHARDSON, Allstate Insurance Company and Safeway Insurance Company of Louisiana, Defendants-Appellants.
No. 35,512-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2002.
*955 Tracy L. Oakley, Ruston, Counsel for Appellant, Safeway Ins. Co.
Raymond L. Cannon, Tallulah, Counsel for Appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
STEWART, J.
Defendant, Safeway Insurance Company of Louisiana, (Safeway) appeals from a judgment awarding plaintiff, Latasha Harrison Griffin, $34,349.08 plus judicial interest and costs for personal injuries Harrison sustained in an accident. For the following reasons, we affirm the judgment of the trial court.

FACTS
On December 31, 1998, 27-year-old Mrs. Latasha Harrison Griffin drove to the home of defendant, Mary Richardson *956 Mitchell[1], to visit Richardson's daughter Yolanda. Ms. Richardson's house is close to the street and most of the small front yard is taken up by a U-shaped driveway. The drivewayas depicted in a photo exhibit is quite short. A drainage ditch runs through the edge of Richardson's yard parallel to the street; the ditch runs under the concrete driveway except where it runs through a small patch of grass that lies in the unpaved area of the yard. Richardson's car was parked directly in front of her house, perpendicular to the house, with the front of the car facing the house and the rear facing the street and close to the grass portion of her front yard.
Harrison parallel parked her vehicle on the street in front of Richardson's house and partially behind Richardson's car and then got out to go to Richardson's front door. Harrison's car was parked less than a car length away from where Richardson's car was stopped.
Harrison did not notice that Richardson was in her car and that Richardson's car was running. Richardson said that she had "a couple of swallows of beer" before driving and that her car radio was on. As Harrison walked toward the door, Richardson began to back her car out of the driveway. Richardson testified that she looked around her, primarily to the left and right, as she backed out, but that she did not see Ms. Harrison. As Richardson backed out, Richardson's car struck Harrison and, according to Harrison, knocked her back against her own vehicle. Although Harrison banged on the back of Richardson's car, Richardson continued to back up, pinning Harrison against her own car. Richardson finally heard Harrison pounding on the car and pulled forward, freeing Harrison.
Harrison testified that before the accident she did not notice Richardson in her car nor did she see Richardson's taillights although the car was between Harrison and her destination, the front door of the Richardson house. Sanquenette Thompson, a witness to the accident, who testified that she was standing in Richardson's front yard, and that she saw that Richardson's taillights were on. Another witness who claimed to be standing in the yard, Derrick Houston, testified by deposition that Ms. Richardson was already backing up as Harrison got out of her vehicle. He said that nothing prevented Richardson from seeing Harrison behind Richardson's car. Houston said that he had seen Richardson drink one beer prior to getting into the car. Harrison testified that she did not see Thompson or Houston in the yard before the accident and said that they could have come out afterward. After the accident, Harrison got back in her vehicle and drove to her mother's house.
At trial, the parties stipulated to the introduction into evidence of Harrison's medical bills and the depositions of Doctors Jose Ferrer and Lawrence Chenier. Ms. Harrison's first visit to a doctor was on January 5, 1999 when she saw Dr. Chenier. At this visit she related complaints of neck, chest, left arm and upper back pain. The doctor observed tenderness in Ms. Harrison's neck, left arm and elbow, upper back and jaw and diagnosed her with sprains in those areas. The doctor prescribed a muscle relaxant to be taken three times a day and a pain reliever as needed. Harrison returned to see Dr. Chenier on January 19, 1999, and complained of pain in the same areas; the doctor added an anti-inflammatory drug to *957 her drug regimen. On Dr. Chenier's advice, Harrison went to physical therapy beginning on January 20, 1999. However, after a few visits, she discontinued physical therapy complaining that therapy made her feel worse instead of better.
Her complaints of pain continued at her next visit, February 2, 1999, and the doctor advised her to apply moist heat to the affected areas four times per day. By her next visit on March 1, 1999, Harrison's left elbow and jaw sprains had resolved and her back and shoulder had improved. On April 6, 1999, Harrison returned to see Dr. Chenier and complained primarily of neck and back pain, and Dr. Chenier advised her to continue physical therapy. On April 20, 1999, Harrison reported to Dr. Chenier complaints of intermittent back and neck pain associated with prolonged sitting or standing or attempts at lifting objects weighing more than 10 pounds. Dr. Chenier then referred Ms. Harrison to Dr. Ferrer for evaluation. Harrison saw Dr. Chenier for the last time on May 24, 1999, and Dr. Chenier's records reflect that Harrison denied any complaints of pain.
Nonetheless, Dr. Jose Ferrer, an orthopedic surgeon, first saw Ms. Harrison on April 21, 1999. At that time, Dr. Ferrer observed that Harrison had approximately 20 percent of the normal range of motion in her back and that her back was very stiff. He also observed that she walked with a minor limp. X-rays of her spine were normal. Dr. Ferrer prescribed anti-inflammatory and pain medicine and advised her to exercise but to avoid excessive stress. On May 12, 1999, she returned to see Dr. Ferrer and complained of increased and more widespread back pain, so he referred her for an MRI. On May 14, 1999, Harrison had the MRI, which revealed a mildly bulging disk at L4-5. On May 19, 1999, Dr. Ferrer advised Harrison that she did not need surgery, but recommended that she continue exercise and return in four weeks. Dr. Ferrer prescribed additional pain medicine. Harrison did not return to see Dr. Ferrer.
In his deposition, Dr. Ferrer said that although Ms. Harrison would probably not need surgery, she would continue to have problems for the indefinite future. He said that an injured disk never heals completely and that treatment for pain would likely consist of physical therapy and medication. He stated that he would expect her to have this conservative therapy for "many, many years" and estimated that "she would need between $3,000 and $5,000 a year in treatments, possibly for the next 10 to 20 years."
Ms. Harrison testified at trial on January 3, 2001, that she continued to have back pain, that she often wore a back brace and that she had to sleep in the brace most nights. She said that she continued to take ibuprofen almost every night and that sleep is often difficult because of discomfort. She also said that her toes tend to go numb since the accident. She said that she is no longer able to stretch and thus is unable to play basketball as she used to do before the accident. She further testified that she is unable to stand for long periods of time, as when shopping in the mall, and that sitting while driving is uncomfortable. Harrison's mother, Nicey Williams, testified that her daughter did not have any of these problems prior to the accident.
Harrison testified that even on her last visit to Dr. Chenier in May 1999, she was still having constant pain and that she told the doctor of her symptoms. Finally, she related her fear that in the future her condition could worsen and lead to paralysis. She submitted copies of medical bills to the court, and of these bills some $1,349.08 had not been paid. Ms. Harrison *958 missed several days of work in January 1999 that she attributed to the accident.
As a result of the accident, Harrison sued Richardson, her insurer Allstate and Harrison's own UM carrier, Safeway. Harrison settled with Ms. Richardson and Allstate but proceeded to trial against Safeway. After hearing the evidence, the trial court found Richardson to be entirely at fault for the accident. In written reasons for judgment, the trial court found that visibility was adequate under the conditions and that Ms. Richardson had her car radio playing loudly. The judge stated that Ms. Richardson should have seen Ms. Harrison or her vehicle before backing up and compared this case to Turner v. NOPSI, 476 So.2d 800 (La.1985). The court awarded Ms. Harrison costs of expert depositions, $528.00 in lost wages, and $3,000.00 in future medical expenses.
Finally, the court awarded Harrison $30,000.00 in general damages. The court referred to Spurrell v. Ivey, et al., 25,359 (La.App.2d Cir.1/25/94), 630 So.2d 1378 and Partner v. Anderson, 513 So.2d 471 (La.App. 2d Cir.1987), and based upon the $30,000.00 awards in those cases awarded that sum to Ms. Harrison.
Safeway now appeals, urging that the court should have assigned some of the fault for the accident to Ms. Harrison and should have awarded her less than $30,000.00 in general damages

DISCUSSION

Comparative Fault
Safeway urges that the trial court erred by assigning all of the fault for the accident to Ms. Richardson and argues that Ms. Harrison was at least 50% at fault.
La. R.S. 32:103 provides:
No person shall move a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety.
La. R.S. 32:281 provides, in part:
A. The driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic.
A high degree of care is generally imposed upon backing motorists to ensure that the maneuver can be safely accomplished. Taylor v. Chism, 27,186 (La.App.2d Cir.8/23/95), 660 So.2d 145, 147. On the other hand, a pedestrian owes a duty of reasonable care, such as would be exercised by a prudent person under similar circumstances. Endsley v. Pennington, 31,027 (La.App.2d Cir.9/29/98), 718 So.2d 650, 652. When a motor vehicle strikes a pedestrian, the case is properly governed by comparative fault principles. La. C.C. art. 2323; Endsley, supra. Several factors are considered in comparing the relative fault of the parties, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, either superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Id.
In Jones v. Allstate Insurance Company, 33,279 (La.App.2d Cir.5/15/00), 759 So.2d 327, 328-29, this court, citing Towns v. Georgia Casualty & Surety Company, 459 So.2d 124 (La.App. 2d. Cir.1984), reviewed the law concerning appellate review of the allocation of fault by the trial court:
In an ordinary tort action presenting cause in fact and reasonableness of conduct questions, the determination and apportionment of fault is a factual issue...

*959 Findings of respective percentages of fault under CC Art. 2323 are factual findings just as the finding of contributory negligence under the prior law was factual. Appellate courts will not disturb such findings unless, for well articulated reasons, those findings are found to be clearly wrong, manifestly erroneous...
Whether a fact-finder determines a party to be one percent at fault, totally at fault, or somewhere in between, the manifest error rule applies.
(Citations omitted.)
When a trial court's allocation of fault is manifestly erroneous or clearly wrong, the reviewing court must lower (or raise) the allocation of fault to the highest (or lowest) point which is reasonably within the trial court's discretion. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607.
Witnesses to this accident testified generally that it occurred just after Ms. Harrison's exit from her car. Ms. Harrison was adamant that she never saw Ms. Richardson backing up or the car's taillights, being focused instead on the front door of Ms. Richardson's house. However, the accident pinned Ms. Harrison against her own vehicle, strongly suggesting that Ms. Richardson simply did not see what she should have seenMs. Harrison's vehicle partly on the driveway. We note that the trial court had the benefit of the parties' testimony concerning the accident with reference to the photo of Ms. Richardson's house, whereas this court must consider the testimony only from the record. Indeed, while showing the judge the photo of Ms. Richardson's house, Ms. Harrison testified:
... Richardson's car was parked here. And, I pulled up the back end of my the vehicle that I was in right there.
The precise locations of the vehicles is not definitely established by the record, but we believe that the trial court had the best opportunity to understand the dynamics of the situation that led to the accident. Accordingly, although Ms. Harrison arguably should have seen Ms. Richardson's car backing up as in Endsley, there is not sufficient evidence of her fault to overturn the trial court's finding of fact.
This assignment of error is without merit.

General Damages
Safeway argues that the trial court erred in awarding Ms. Harrison $30,000 in general damages. In Beasley v. Yokem Toyota, 33,805 (La.App.2d Cir.8/23/00), 767 So.2d 149, 161, this court explained the appellate review of an award of general damages:
La. C.C. art. 2324.1 provides that in the assessment of damages, much discretion must be left to the judge or jury. To modify an award for general damages, an appellate court must find that the trial judge or jury has abused the "much discretion" accorded by the statute. Stegall v. State Farm Mutual Automobile Insurance Company, 29,986 (La.App.2d Cir.10/29/97), 702 So.2d 66. With respect to the award of general damages, each case must be weighed and evaluated according to its own particular facts and circumstances. Stegall v. State Farm Mutual Automobile Insurance Company, supra.

General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of life or lifestyle that cannot be measured definitively in terms of money. Kose v. Cablevision of Shreveport, [32,855 (La.App.2d Cir.4/5/00), 755 So.2d 1039, writs denied, XXXX-XXXX, XXXX-XXXX (La.6/16/2000), 764 So.2d 964, 765 So.2d 340]. The primary objective of *960 general damages is to restore the injured party in as near a fashion as possible to the state he was in at the time immediately preceding the injury. There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Kose v. Cablevision of Shreveport, supra. The factors to be considered in assessing quantum for pain and suffering are severity and duration. There is no rule or standard of law fixing or establishing the amount of recovery and each case, consequently, must rest on its own set of facts. Stegall v. State Farm Mutual Automobile Insurance Company, supra.

The discretion vested in the trier of fact is "great" and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Although we believe that the $30,000 award is at the highest end of the scale for Harrison's injuries, we do not believe it to be outside the range of the awards appropriate under the circumstances. Harrison relates that her back pain is still sufficient to require her more often than not to wear a back brace while she sleeps, and even so, her sleep is frequently interrupted by pain. She stated that she continues to carry non-prescription pain medicine wherever she goes and that she does not take prescription pain medicine only because she fears becoming addicted. Dr. Ferrer estimated that Harrison's back pain could continue for many years. Harrison testified that the pain kept her from being able to comfortably drive or to stand for long periods. The indefinite duration of Harrison's pain and the severity of the pain are adequate to support the $30,000.00 award.
This assignment of error is without merit.

CONCLUSION
For the above-assigned reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant Safeway Insurance Company.
AFFIRMED.
NOTES
[1] For the convenience of the reader, we will refer to Mrs. Griffin as Ms. Harrison and to Mrs. Mitchell as Ms. Richardson as the parties were known at the time of this accident and as they are referred to in brief.