WILLIAMS, J.
| ¶ Jeff Coleman, Sr. (“Coleman Sr.”) and his automobile insurer, Safeway Insurance Company of Louisiana (“Safeway”) appeal a judgment of the trial court finding Coleman Sr. was solely at fault for causing an automobile collision at an intersection during a funeral procession. For the following reasons, we affirm the trial court’s judgment.
*371 FACTS
On August 25, 2001, plaintiffs were operators/passengers of various vehicles participating in a funeral procession. Coleman Sr. was the owner/operator of a 1991 Isuzu pickup truck and Joyce Thompson was his guest passenger. Jeff Coleman, Jr. (“Coleman Jr.”) was the driver of an uninsured 1986 Isuzu Trooper and his wife, Mary Coleman, and Leonard McDaniel were guest passengers.[1] Defendant, Larry Townsend, was the owner/operator of a 1993 Chevrolet Cavalier and was not a participant in the funeral procession.
The funeral procession was traveling southbound on U.S. Highway 165 (“Hwy.165”). Coleman Sr. was traveling in the right outside lane, and the vehicle being operated by Coleman Jr. was directly behind him. Townsend was stopped at a red light at the intersection of Hwy. 165 and Louisiana Highway 15. When Townsend’s light turned green, he continued to wait as the funeral procession continued. According to Townsend, he observed a “gap” in the procession, so he entered the intersection and collided with Coleman Sr.’s vehicle. The vehicle being driven by Coleman Jr. also collided with Coleman Sr.’s vehicle.
12Three consolidated lawsuits were filed in Monroe City Court seeking damages for injuries sustained in the accident. Coleman Jr. filed a suit, naming Townsend and his insurer, Continental Insurance Company (“Continental”), as defendants. Mary Coleman and the heirs of Leonard McDaniel filed a suit against Townsend, Continental, Coleman Sr. and Safeway.[2] Coleman Sr. filed suit, naming as defendants his own insurer, Safeway, Townsend and Continental.
Following a bench trial, the trial court ruled that Coleman Sr. was solely at fault for causing the accident. Citing Monroe City Code, § 33-35(5) the court stated:
Mr. Coleman Sr.’s failure to yield or stop, prior to navigating through the busy U.S. Highway 165 and [Louisiana] Highway 15 intersection, was the sole cause of the collision.
[[Image here]]
Although Mr. Coleman Sr. was in a funeral procession, he yet had a duty to yield and/or stop prior to entering the intersection.
The court dismissed all the plaintiffs’ claims against Townsend and his insurer. However, the ruling did not address the issue of damages. Ms. Coleman appealed, and this court dismissed the appeal, concluding that the judgment was not a final judgment for the purposes of an immediate appeal. The matter was remanded for further proceedings. Coleman v. Townsend, 39,023 (La.App.2d Cir.10/27/04), 886 So.2d 643.
| oQn remand, the trial court issued a judgment reaffirming that Coleman Sr. was the sole cause of the accident and awarded damages to Ms. Coleman, Ms. Thompson and the McDaniel heirs.[3] Coleman Sr. and Safeway appealed, and this court dismissed the appeal, finding that the judgment appealed from was not a *372 valid judgment because the judge who signed the judgment was not the trial judge. Coleman v. Townsend, 40,246 (La.App.2d Cir.6/27/05) (unpublished). Subsequently, the trial judge signed the judgment in this matter, and the instant appeal followed.
DISCUSSION
Coleman Sr. contends the trial court erred in finding that he was solely at fault in causing the collision. According to Coleman Sr., Townsend negligently entered the intersection after seeing the funeral procession in progress, and Coleman Jr. was negligent in failing to stop or yield at the intersection.
In an ordinary tort action, the determination and apportionment of fault is a factual issue. Harrison v. Richardson, 35,512 (La.App.2d Cir.1/23/02), 806 So.2d 954; Jones v. Allstate Ins. Co., 33,279 (La.App.2d Cir.5/15/00), 759 So.2d 327. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Duncan v. Kansas City Southern Ry. Co., 2000-0066 (La.10/30/00), 773 So.2d 670, cert. dismissed, Duncan ex rel. Duncan v. Kansas City Southern Ry. Co., 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001). Therefore, an ^appellate court should only disturb the trier of fact’s allocation of fault when it is clearly wrong or manifestly erroneous. Id.; Stobart v. State, Dept. Of Transp. & Dev., 617 So.2d 880 (La.1993).
Where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Night and Day Partners, Ltd. v. Great American Real Food Fast, Inc., 37,927 (La.App.2d Cir.3/17/04), 876 So.2d 850. The reviewing court must always keep in mind that if a trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. Stobart, supra; Housley v. Cerise, 579 So.2d 973 (La.1991). For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong, but whether the fact-finder’s conclusions were reasonable. Stobart, supra.
LSA-R.S. 32:232 provides, in pertinent part:
Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
[[Image here]]
(3) Steady RED indication:
(a) Vehicular traffic facing a steady circular red signal alone shall stop at a clearly marked stop line, or if none, then before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection, and shall remain standing until an indication to proceed is shown....
| sThe mere fact that a driver is a participant in a funeral procession does not relieve him of the obligation of obeying the traffic signal, unless it is shown by the pleadings and the evidence that a local ordinance gave him this right. Boles v. Fireman’s Fund American Ins. Co., 250 So.2d 529 (La.App. 2d Cir.1971).
Monroe City Code, § 33-35 provides, in pertinent part:
The following shall apply to all funeral processions in and through the city:
*373 * * *
(5) When properly escorted by a police officer and when directed so to do by such police officer, a funeral procession (including every vehicle therein maintaining proper illumination and interval) shall proceed through stop signs and red or yellow traffic lights, provided that every operator of a vehicle in such procession shall proceed with caution into or across any intersection where such vehicle would not have right-of-way if not in a funeral procession.
[[Image here]]
In the instant case, Coleman Sr. testified that he was driving his vehicle during the funeral procession on the day in question. He stated that the procession was led by a police officer, followed by the hearse and family car. Coleman Sr. estimated that he was approximately seven to eight vehicles behind the police officer, and approximately 20 vehicles were involved in the procession. According to Coleman Sr., the police officer leading the procession stopped at the intersection, allowed two or three cars to proceed and went back to the front of the procession. Coleman Sr. admitted that he disregarded the traffic signal at the intersection, stating:
|fiI didn’t pay any attention to the light because I was in a funeral. I never really looked because I always know funerals go through a light. Because the police was leading it and the rest of them were going over and I did, too. According to Townsend’s testimony, he
had stopped at the red light at the intersection when he observed the beginning of a funeral procession. When the light turned green, he remained stationary because the procession had not ended. He stated that he noticed a “gap” in the traffic and believed the procession had come to an end. He described the “gap” as “an extended length of space between the last vehicle and the next vehicle” which was approximately three car lengths. Townsend further stated that he believed Coleman Sr. was coming to a stop because he was traveling at a slow rate of speed. He testified that he did not believe the Coleman Sr. vehicle was part of the procession, so he proceeded through the intersection.
It is undisputed that Coleman Sr. entered into the intersection against a red light. By his own admission, he disregarded the traffic signal because he was involved in a funeral procession. Thus, it is clear that Coleman Sr. violated LSA-R.S. 32:232 by failing to “stop ... before entering the intersection, and ... remain standing until an indication to proceed [was] shown.... ” Additionally, Coleman Sr. failed to proceed with caution into or across the intersection where his vehicle would not have had the right-of-way if it had not been in a funeral procession, as mandated by § 33-35(5) of the Monroe City Code. For these reasons, we find the trial court’s determination that Coleman Sr. was solely at fault was reasonable and will not be disturbed by this court.
IvCONCLUSION
For the reasons set forth above, the trial court’s judgment is hereby affirmed at appellant’s costs.
AFFIRMED.

. The Isuzu Trooper was owned by Coleman Jr.’s mother, Beulah Mae Coleman, who was separated from Coleman Sr.

. Sometime after the accident, Mr. McDaniel died of unrelated causes. The lawsuit was filed on his behalf by his heirs, Anthony Bright, Lafayette McDaniel, individually and on behalf of her minor siblings, Leon McDaniel and Jeremiah McDaniel, and Leonard McDaniel and Kunta McDaniel.

.The court determined that Coleman Jr.'s claim was barred under the "no-pay-no-play” law because his vehicle was uninsured. Coleman Jr. did not appeal that determination.